## BOURJAILY *v.* UNITED STATES

No. 85–6725.   Argued April 1, 1987—Decided June 23, 1987

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, POWELL, STEVENS, O'CONNOR, and SCALIA, JJ., joined. STEVENS, J., filed a concurring opinion, *post*, p. 184. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 186.

*Stephen Allan Saltzburg* argued the cause for petitioner. With him on the briefs were *James R. Willis* and *James M. Shellow.*

*Lawrence S. Robbins* argued the cause for the United States. With him on the brief were *Solicitor General Fried, Assistant Attorney General Weld,* and *Deputy Solicitor General Bryson.* *

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Federal Rule of Evidence 801(d)(2)(E) provides: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." We granted certiorari to answer three questions regarding the admission of statements under Rule 801(d)(2)(E): (1) whether the court must determine by independent evidence that the conspiracy existed and that the defendant and the declarant were members of this conspiracy; (2) the quantum of proof on which such determinations must be based; and (3) whether a court must in each case examine the circumstances of such a statement to determine its reliability. 479 U. S. 881 (1986).

In May 1984, Clarence Greathouse, an informant working for the Federal Bureau of Investigation (FBI), arranged to sell a kilogram of cocaine to Angelo Lonardo. Lonardo agreed that he would find individuals to distribute the drug. When the sale became imminent, Lonardo stated in a tape-recorded telephone conversation that he had a "gentleman friend" who had some questions to ask about the cocaine. In a subse-

---

*\*Judy Clarke* and *Mario G. Conte* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

quent telephone call, Greathouse spoke to the "friend" about the quality of the drug and the price. Greathouse then spoke again with Lonardo, and the two arranged the details of the purchase. They agreed that the sale would take place in a designated hotel parking lot, and Lonardo would transfer the drug from Greathouse's car to the "friend," who would be waiting in the parking lot in his own car. Greathouse proceeded with the transaction as planned, and FBI agents arrested Lonardo and petitioner immediately after Lonardo placed a kilogram of cocaine into petitioner's car in the hotel parking lot. In petitioner's car, the agents found over $20,000 in cash.

Petitioner was charged with conspiring to distribute cocaine, in violation of 21 U. S. C. § 846, and possession of cocaine with intent to distribute, a violation of 21 U. S. C. § 841(a)(1). The Government introduced, over petitioner's objection, Angelo Lonardo's telephone statements regarding the participation of the "friend" in the transaction. The District Court found that, considering the events in the parking lot and Lonardo's statements over the telephone, the Government had established by a preponderance of the evidence that a conspiracy involving Lonardo and petitioner existed, and that Lonardo's statements over the telephone had been made in the course of and in furtherance of the conspiracy. App. 66–75. Accordingly, the trial court held that Lonardo's out-of-court statements satisfied Rule 801(d)(2)(E) and were not hearsay. Petitioner was convicted on both counts and sentenced to 15 years. The United States Court of Appeals for the Sixth Circuit affirmed. 781 F. 2d 539 (1986). The Court of Appeals agreed with the District Court's analysis and conclusion that Lonardo's out-of-court statements were admissible under the Federal Rules of Evidence. The court also rejected petitioner's contention that because he could not cross-examine Lonardo, the admission of these statements violated his constitutional right to confront the witnesses against him. We affirm.

Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy." Federal Rule of Evidence 104(a) provides: "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court." Petitioner and the Government agree that the existence of a conspiracy and petitioner's involvement in it are preliminary questions of fact that, under Rule 104, must be resolved by the court. The Federal Rules, however, nowhere define the standard of proof the court must observe in resolving these questions.

We are therefore guided by our prior decisions regarding admissibility determinations that hinge on preliminary factual questions. We have traditionally required that these matters be established by a preponderance of proof. Evidence is placed before the jury when it satisfies the technical requirements of the evidentiary Rules, which embody certain legal and policy determinations. The inquiry made by a court concerned with these matters is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied. Thus, the evidentiary standard is unrelated to the burden of proof on the substantive issues, be it a criminal case, see *In re Winship*, 397 U. S. 358 (1970), or a civil case. See generally *Colorado* v. *Connelly*, 479 U. S. 157, 167–169 (1986). The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration. As in *Lego* v. *Twomey*, 404 U. S. 477, 488 (1972), we find "nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based

on some higher standard." We think that our previous decisions in this area resolve the matter. See, *e. g., Colorado* v. *Connelly, supra* (preliminary fact that custodial confessant waived rights must be proved by preponderance of the evidence); *Nix* v. *Williams,* 467 U. S. 431, 444, n. 5 (1984) (inevitable discovery of illegally seized evidence must be shown to have been more likely than not); *United States* v. *Matlock,* 415 U. S. 164 (1974) (voluntariness of consent to search must be shown by preponderance of the evidence); *Lego* v. *Twomey, supra* (voluntariness of confession must be demonstrated by a preponderance of the evidence). Therefore, we hold that when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence.[1]

Even though petitioner agrees that the courts below applied the proper standard of proof with regard to the preliminary facts relevant to Rule 801(d)(2)(E), he nevertheless challenges the admission of Lonardo's statements. Petitioner argues that in determining whether a conspiracy exists and whether the defendant was a member of it, the court must look only to independent evidence—that is, evidence other than the statements sought to be admitted. Petitioner relies on *Glasser* v. *United States,* 315 U. S. 60 (1942), in which this Court first mentioned the so-called "bootstrapping rule." The relevant issue in *Glasser* was whether Glasser's counsel, who also represented another defendant, faced such a conflict of interest that Glasser received ineffective assistance. Glasser contended that conflicting loyalties led his lawyer not to object to statements made by one of Glasser's

---

[1] We intimate no view on the proper standard of proof for questions falling under Federal Rule of Evidence 104(b) (conditional relevancy). We also decline to address the circumstances in which the burden of coming forward to show that the proffered evidence is inadmissible is appropriately placed on the nonoffering party. See E. Cleary, McCormick on Evidence § 53, p. 136, n. 8 (3d ed. 1984). Finally, we do not express an opinion on the proper order of proof that trial courts should follow in concluding that the preponderance standard has been satisfied in an ongoing trial.

co-conspirators. The Government argued that any objection would have been fruitless because the statements were admissible. The Court rejected this proposition:

> "[S]uch declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof *aliunde* that he is connected with the conspiracy. . . . Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence." *Id.*, at 74–75.

The Court revisited the bootstrapping rule in *United States v. Nixon*, 418 U. S. 683 (1974), where again, in passing, the Court stated: "Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, *by independent evidence*, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy." *Id.*, at 701, and n. 14 (emphasis added) (footnote omitted). Read in the light most favorable to petitioner, *Glasser* could mean that a court should not consider hearsay statements at all in determining preliminary facts under Rule 801(d)(2)(E). Petitioner, of course, adopts this view of the bootstrapping rule. *Glasser*, however, could also mean that a court must have *some* proof *aliunde*, but may look at the hearsay statements themselves in light of this independent evidence to determine whether a conspiracy has been shown by a preponderance of the evidence. The Courts of Appeals have widely adopted the former view and held that in determining the preliminary facts relevant to co-conspirators' out-of-court statements, a court may not look at the hearsay statements themselves for their evidentiary value.

Both *Glasser* and *Nixon*, however, were decided before Congress enacted the Federal Rules of Evidence in 1975. These Rules now govern the treatment of evidentiary questions in federal courts. Rule 104(a) provides: "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . . In making its determina-

tion it is not bound by the rules of evidence except those with respect to privileges." Similarly, Rule 1101(d)(1) states that the Rules of Evidence (other than with respect to privileges) shall not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104." The question thus presented is whether any aspect of *Glasser*'s bootstrapping rule remains viable after the enactment of the Federal Rules of Evidence.

Petitioner concedes that Rule 104, on its face, appears to allow the court to make the preliminary factual determinations relevant to Rule 801(d)(2)(E) by considering any evidence it wishes, unhindered by considerations of admissibility. Brief for Petitioner 27. That would seem to many to be the end of the matter. Congress has decided that courts may consider hearsay in making these factual determinations. Out-of-court statements made by anyone, including putative co-conspirators, are often hearsay. Even if they are, they may be considered, *Glasser* and the bootstrapping rule notwithstanding. But petitioner nevertheless argues that the bootstrapping rule, as most Courts of Appeals have construed it, survived this apparently unequivocal change in the law unscathed and that Rule 104, as applied to the admission of co-conspirator's statements, does not mean what it says. We disagree.

Petitioner claims that Congress evidenced no intent to disturb the bootstrapping rule, which was embedded in the previous approach, and we should not find that Congress altered the rule without affirmative evidence so indicating. It would be extraordinary to require legislative history to *confirm* the plain meaning of Rule 104. The Rule on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege. We think that the Rule is sufficiently clear that to the extent that it is inconsistent with

petitioner's interpretation of *Glasser* and *Nixon*, the Rule prevails.[2]

Nor do we agree with petitioner that this construction of Rule 104(a) will allow courts to admit hearsay statements without any credible proof of the conspiracy, thus fundamentally changing the nature of the co-conspirator exception. Petitioner starts with the proposition that co-conspirators' out-of-court statements are deemed unreliable and are inadmissible, at least until a conspiracy is shown. Since these statements are unreliable, petitioner contends that they should not form any part of the basis for establishing a conspiracy, the very antecedent that renders them admissible.

Petitioner's theory ignores two simple facts of evidentiary life. First, out-of-court statements are only *presumed* unreliable. The presumption may be rebutted by appropriate proof. See Fed. Rule Evid. 803(24) (otherwise inadmissible hearsay may be admitted if circumstantial guarantees of trustworthiness demonstrated). Second, individual pieces of

---

[2] The Advisory Committee Notes show that the Rule was not adopted in a fit of absentmindedness. The Note to Rule 104 specifically addresses the process by which a federal court should make the factual determinations requisite to a finding of admissibility:

"If the question is factual in nature, the judge will of necessity receive evidence pro and con on the issue. The rule provides that the rules of evidence in general do not apply to this process. McCormick § 53, p. 123, n. 8, points out that the authorities are 'scattered and inconclusive,' and observes:

" 'Should the exclusionary law of evidence, "the child of the jury system" in Thayer's phrase, be applied to this hearing before the judge? Sound sense backs the view that it should not, and that the judge should be empowered to hear *any relevant evidence*, such as affidavits *or other reliable hearsay.*'" 28 U. S. C. App., p. 681 (emphasis added).

The Advisory Committee further noted: "An item, offered and objected to, *may itself be considered in ruling on admissibility*, though not yet admitted in evidence." *Ibid.* (emphasis added). We think this language makes plain the drafters' intent to abolish any kind of bootstrapping rule. Silence is at best ambiguous, and we decline the invitation to rely on speculation to import ambiguity into what is otherwise a clear rule.

evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts. Taken together, these two propositions demonstrate that a piece of evidence, unreliable in isolation, may become quite probative when corroborated by other evidence. A *per se* rule barring consideration of these hearsay statements during preliminary factfinding is not therefore required. Even if out-of-court declarations by co-conspirators are presumptively unreliable, trial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case. Courts often act as factfinders, and there is no reason to believe that courts are any less able to properly recognize the probative value of evidence in this particular area. The party opposing admission has an adequate incentive to point out the shortcomings in such evidence before the trial court finds the preliminary facts. If the opposing party is unsuccessful in keeping the evidence from the factfinder, he still has the opportunity to attack the probative value of the evidence as it relates to the substantive issue in the case. See, *e. g.*, Fed. Rule Evid. 806 (allowing attack on credibility of out-of-court declarant).

We think that there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy. Petitioner's case presents a paradigm. The out-of-court statements of Lonardo indicated that Lonardo was involved in a conspiracy with a "friend." The statements indicated that the friend had agreed with Lonardo to buy a kilogram of cocaine and to distribute it. The statements also revealed that the friend would be at the hotel parking lot, in his car, and would accept the cocaine from Greathouse's car after Greathouse gave Lonardo the keys. Each one of Lonardo's statements may itself be unreliable, but taken as a whole, the entire conversation between Lonardo and Greathouse was corroborated by

independent evidence. The friend, who turned out to be petitioner, showed up at the prearranged spot at the prearranged time. He picked up the cocaine, and a significant sum of money was found in his car. On these facts, the trial court concluded, in our view correctly, that the Government had established the existence of a conspiracy and petitioner's participation in it.

We need not decide in this case whether the courts below could have relied solely upon Lonardo's hearsay statements to determine that a conspiracy had been established by a preponderance of the evidence. To the extent that *Glasser* meant that courts could not look to the hearsay statements themselves for any purpose, it has clearly been superseded by Rule 104(a). It is sufficient for today to hold that a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted. As we have held in other cases concerning admissibility determinations, "the judge should receive the evidence and give it such weight as his judgment and experience counsel." *United States* v. *Matlock*, 415 U. S., at 175. The courts below properly considered the statements of Lonardo and the subsequent events in finding that the Government had established by a preponderance of the evidence that Lonardo was involved in a conspiracy with petitioner. We have no reason to believe that the District Court's factfinding of this point was clearly erroneous. We hold that Lonardo's out-of-court statements were properly admitted against petitioner.[3]

We also reject any suggestion that admission of these statements against petitioner violated his rights under the Confrontation Clause of the Sixth Amendment. That Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

---

[3] Given this disposition, we have no occasion to address the Government's argument, Brief for United States 21–25, that Lonardo's statements are admissible independent of Rule 801(d)(2)(E).

against him." At petitioner's trial, Lonardo exercised his right not to testify. Petitioner argued that Lonardo's unavailability rendered the admission of his out-of-court statements unconstitutional since petitioner had no opportunity to confront Lonardo as to these statements. The Court of Appeals held that the requirements for admission under Rule 801(d)(2)(E) are identical to the requirements of the Confrontation Clause, and since the statements were admissible under the Rule, there was no constitutional problem. We agree.

While a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, this Court has rejected that view as "unintended and too extreme." *Ohio* v. *Roberts*, 448 U. S. 56, 63 (1980). Rather, we have attempted to harmonize the goal of the Clause—placing limits on the kind of evidence that may be received against a defendant—with a societal interest in accurate factfinding, which may require consideration of out-of-court statements. To accommodate these competing interests, the Court has, as a general matter only, required the prosecution to demonstrate both the unavailability of the declarant and the "indicia of reliability" surrounding the out-of-court declaration. *Id.*, at 65–66. Last Term in *United States* v. *Inadi*, 475 U. S. 387 (1986), we held that the first of these two generalized inquiries, unavailability, was not required when the hearsay statement is the out-of-court declaration of a co-conspirator. Today, we conclude that the second inquiry, independent indicia of reliability, is also not mandated by the Constitution.

The Court's decision in *Ohio* v. *Roberts* laid down only "a general approach to the problem" of reconciling hearsay exceptions with the Confrontation Clause. See 448 U. S., at 65. In fact, *Roberts* itself limits the requirement that a court make a separate inquiry into the reliability of an out-of-court statement. Because "'hearsay rules and the Confrontation Clause are generally designed to protect similar values,'

*California* v. *Green*, 399 U. S. [149, 155 (1970)], and 'stem from the same roots,' *Dutton* v. *Evans*, 400 U. S. 74, 86 (1970)," *id.*, at 66, we concluded in *Roberts* that no independent inquiry into reliability is required when the evidence "falls within a firmly rooted hearsay exception." *Ibid.* We think that the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that, under this Court's holding in *Roberts*, a court need not independently inquire into the reliability of such statements. Cf. *Dutton* v. *Evans*, 400 U. S. 74 (1970) (reliability inquiry required where evidentiary rule deviates from common-law approach, admitting co-conspirators' hearsay statements made after termination of conspiracy). The admissibility of co-conspirators' statements was first established in this Court over a century and a half ago in *United States* v. *Gooding*, 12 Wheat. 460 (1827) (interpreting statements of co-conspirator as *res gestae* and thus admissible against defendant), and the Court has repeatedly reaffirmed the exception as accepted practice. In fact, two of the most prominent approvals of the rule came in cases that petitioner maintains are still vital today, *Glasser* v. *United States*, 315 U. S. 60 (1942), and *United States* v. *Nixon*, 418 U. S. 683 (1974). To the extent that these cases have not been superseded by the Federal Rules of Evidence, they demonstrate that the co-conspirator exception to the hearsay rule is steeped in our jurisprudence. In *Delaney* v. *United States*, 263 U. S. 586, 590 (1924), the Court rejected the very challenge petitioner brings today, holding that there can be no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court statement. In so ruling, the Court relied on established precedent holding such statements competent evidence. We think that these cases demonstrate that co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion. Accordingly, we hold that the Confrontation Clause does not require a court to embark on an

independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E).[4]

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE STEVENS, concurring.

The rule against "bootstrapping" announced in *Glasser* v. *United States,* 315 U. S. 60, 74–75 (1942), has two possible interpretations. The more prevalent interpretation adopted by the Courts of Appeals is that the admissibility of the declaration under the co-conspirator rule must be determined *entirely* by independent evidence. The Court correctly holds that this reading of the *Glasser* rule is foreclosed by the plain language of Rule 104(a) of the Federal Rules of Evidence. That Rule unambiguously authorizes the trial judge to consider the contents of a proffered declaration in determining its admissibility.

I have never been persuaded, however, that this interpretation of the *Glasser* rule is correct. In my view, *Glasser* holds that a declarant's out-of-court statement is inadmissible against his alleged co-conspirators unless there is some corroborating evidence to support the triple conclusion that there was a conspiracy among those defendants, that the declarant was a member of the conspiracy, and that the statement furthered the objectives of the conspiracy. An otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility—it cannot lift itself into admissibility entirely by tugging on its own bootstraps. It may, however, use its own bootstraps, together with other support, to overcome the objection. In the words

---

[4] We reject any suggestion that by abolishing the bootstrapping rule, the Federal Rules of Evidence have changed the co-conspirator hearsay exception such that it is no longer "firmly rooted" in our legal tradition. The bootstrapping rule relates only to the *method of proof* that the exception has been satisfied. It does not change any element of the co-conspirator exception, which has remained substantively unchanged since its adoption in this country.

of the *Glasser* opinion, there must be proof *"aliunde,"* that is, evidence from another source, that together with the contents of the statement satisfies the preliminary conditions for admission of the statement. *Id.,* at 74.[1] This interpretation of *Glasser* as requiring some but not complete proof *"aliunde"* is fully consistent with the plain language of Rule 104(a).[2] If, as I assume they did, the drafters of Rule 104(a) understood the *Glasser* rule as I do, they had no reason to indicate that it would be affected by the new Rule.[3]

Thus, the absence of any legislative history indicating an intent to change the *Glasser* rule is entirely consistent with the reasoning of the Court's opinion, which I join.

---

[1] Glasser had argued that "independently of the statements complained of, there is *no proof* connecting him with the conspiracy." 315 U. S., at 75 (emphasis added).

[2] While the more prevalent interpretation of *Glasser* is that the admissibility of the declaration must be determined entirely by independent evidence, other Courts of Appeals have concluded that Rule 104(a) cut back on *Glasser*, rather than eliminating it completely, and thus preserved its requirement of some proof *aliunde*. As the First Circuit concluded in *United States v. Martorano*, 557 F. 2d 1, 12 (1977), cert. denied, 435 U. S. 922 (1978):

"We believe the new rules [of evidence] must be taken as overruling *Glasser* to the extent that it held that the statement seeking admission cannot be considered at all in making the determination whether a conspiracy exists. *Glasser*, however, still stands as a warning to trial judges that such statements should ordinarily be given little weight. Here, *where there is significant independent evidence of the existence of a conspiracy and where the statement seeking admission simply corroborates inferences which can be drawn from the independent evidence*, we see no problem with the consideration of that statement" (emphasis added).

See also *United States v. Vinson*, 606 F. 2d 149, 153, n. 8 (CA6 1979), cert. denied, 444 U. S. 1074 (1980); *United States v. Enright*, 579 F. 2d 980, 985, n. 4 (CA6 1978).

[3] The Advisory Committee Notes to Rule 104(a) are consistent with my view that some quantum of proof *aliunde* was, and still is, required: "An item, offered and objected to, may itself be considered in ruling on admissibility, though not yet admitted in evidence." 28 U. S. C. App., p. 681.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

I disagree with the Court in three respects:[1] First, I do not believe that the Federal Rules of Evidence changed the long- and well-settled law to the effect that the preliminary questions of fact, relating to admissibility of a nontestifying co-conspirator's statement, must be established by evidence independent of that statement itself. Second, I disagree with the Court's conclusion that allowing the co-conspirator's statement to be considered in the resolution of these factual questions will remedy problems of the statement's unreliability. In my view, the abandonment of the independent-evidence requirement will lead, instead, to the opposite result. This is because the abandonment will eliminate one of the few safeguards of reliability that this exemption from the hearsay definition possesses. Third, because the Court alters the traditional hearsay exemption—especially an aspect of it that contributes to the reliability of an admitted statement—I do not believe that the Court can rely on the "firmly rooted hearsay exception" rationale, see *Ohio* v. *Roberts*, 448 U. S. 56, 66 (1980), to avoid a determination whether any "indicia of reliability" support the co-conspirator's statement, as the Confrontation Clause surely demands.

I

The Court recognizes that, according to the common-law view of the exemption of a co-conspirator's statement from the hearsay definition, an offering party was required to establish, as preliminary factual matters, the existence of a conspiracy and a defendant's participation therein by evidence apart from the co-conspirator's statement. *Ante*, at 177. In the Court's view, this settled law was changed in 1975 by the adoption of the Federal Rules of Evidence, par-

---

[1] I do agree with the Court that the standard of proof by which an offering party establishes the preliminary facts of Rule 801(d)(2)(E) is the preponderance of the evidence. See *ante*, at 176.

ticularly Rules 104(a) and 1101(d)(1). As the Court explains, the plain language of Rule 104(a) allows a trial court to consider any information, including hearsay, in making preliminary factual determinations relating to Rule 801(d)(2)(E). *Ante*, at 177–178. Thus, reasons the Court, under the Rule a trial court should be able to examine the co-conspirator's statement itself in resolving the threshold factual question— whether a conspiracy, to which the defendant belonged, existed. According to the Court, in light of Rule 104(a)'s "plain meaning" there is no need to take the "extraordinary" step of looking to legislative history for confirmation of this meaning. *Ante*, at 178.[2]

I agree that a federal rule's "plain meaning," when it appears, should not be lightly ignored or dismissed. The inclination to accept what seems to be the immediate reading of a federal rule, however, must be tempered with caution when, as in the case of a Federal Rule of Evidence, the rule's complex interrelations with other rules must be understood before one can resolve a particular interpretive problem. See generally Cleary, Preliminary Notes on Reading the Rules of Evidence, 57 Neb. L. Rev. 908 (1978) ("[T]he answers to all questions that may arise under the Rules may not be found in specific terms in the Rules"). In addition, if the language of a rule plainly appears to address a specific problem, one *naturally* would expect legislative history (if it exists) to confirm this plain meaning. In this case, Rule 104(a) cannot be read apart from Rule 801(d)(2)(E), which was a codification of the common-law exemption of co-conspirator statements from the hearsay definition, an exemption that included the independent-evidence requirement. An examination of the legislative history of Rule 801(d)(2)(E) reveals that neither the drafters nor Congress intended to transform this requirement in any way. In sum, the Court espouses an overly

---

[2] The Court casts a cursory glance at this history and purports to find that it supports the Court's interpretation of the Rules in question. See *ante*, at 179, n. 2.

rigid interpretive approach; a more complete analysis casts significant and substantial doubt on the Court's "plain meaning" easy solution.

## A

In order to understand why the Federal Rules of Evidence adopted without change the common-law co-conspirator exemption from hearsay, and why this adoption signified the Advisory Committee's intent to retain the exemption's independent-evidence requirement, it is useful to review briefly the contours of this exemption as it stood before enactment of the Rules. By all accounts, the exemption was based upon agency principles, the underlying concept being that a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all. See 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01], pp. 801–232 and 801–233 (1985) (Weinstein & Berger); Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L. Rev. 1378, 1384 (1972) (Davenport). As Judge Learned Hand explained this in a frequently quoted remark:

> "When men enter into an agreement for an unlawful end, they become ad hoc agents for one another, and have made a 'partnership in crime.' What one does pursuant to their common purpose, all do, and, as declarations may be such acts, they are competent against all." *Van Riper* v. *United States*, 13 F. 2d 961, 967 (CA2), cert. denied *sub nom. Ackerson* v. *United States*, 273 U. S. 702 (1926).

Each of the components of this common-law exemption, in turn, had an agency justification. To fall within the exemption, the co-conspirator's statement had to be made "in furtherance of" the conspiracy, a requirement that arose from the agency rationale that an agent's acts or words could be attributed to his principal only so long as the agent was act-

ing within the scope of his employment. See Levie, Hearsay and Conspiracy: A Reexamination of the Co-Conspirators' Exception to the Hearsay Rule, 52 Mich. L. Rev. 1159, 1161 (1954) (Levie); 4 D. Louisell & C. Mueller, Federal Evidence § 427, p. 348 (1980) (Louisell & Mueller). The statement also had to be made "during the course of" the conspiracy. This feature necessarily accompanies the "in furtherance of" requirement, for there must be an employment or business relationship in effect between the agent and principal, in accordance with which the agent is acting, for the principal to be bound by his agent's deeds or words. See Levie, 52 Mich. L. Rev., at 1161; 4 Louisell & Mueller 337.

The final feature of the co-conspirator hearsay exemption, the independent-evidence requirement, directly corresponds to the agency concept that an agent's statement cannot be used alone to prove the existence of the agency relationship.

> "Evidence of a statement by an agent concerning the existence or extent of his authority is not admissible against the principal to prove its existence or extent, unless it appears *by other evidence* that the making of such statement was within the authority of the agent or, as to persons dealing with the agent, within the apparent authority or other power of the agent" (emphasis added). Restatement (Second) of Agency § 285 (1958).

See Levie, 52 Mich. L. Rev., at 1161. The reason behind this concept is that the agent's authority must be traced back to some act or statement by the alleged principal. See 1 F. Mechem, Law of Agency § 285, p. 205 (1914).

Thus, unlike many common-law hearsay exceptions, the co-conspirator exemption from hearsay with its agency rationale was not based primarily upon any particular guarantees of reliability or trustworthiness that were intended to ensure the truthfulness of the admitted statement and to compensate for the fact that a party would not have the opportunity to test its veracity by cross-examining the declarant. See Davenport, 85 Harv. L. Rev., at 1384. As such, this exemp-

tion was considered to be a "vicarious admission."[3]   Although not an admission by a defendant himself, the vicarious admission was a statement imputed to the defendant from the co-conspirator on the basis of their agency relationship. As with all admissions, an "adversary system," rather than a reliability, rationale was used to account for the exemption to the ban on hearsay: it was thought that a party could not complain of the deprivation of the right to cross-examine himself (or another authorized to speak for him) or to advocate his own, or his agent's, untrustworthiness.   See E. Cleary, McCormick on Evidence § 262, p. 775 (3d ed. 1984).   The co-conspirator "admission" exception was also justified on the ground that the need for this evidence, which was particularly valuable in prosecuting a conspiracy, permitted a somewhat reduced concern for the reliability of the statement.[4] See Saltzburg, Standards of Proof and Preliminary Questions of Fact, 27 Stan. L. Rev. 271, 303 (1975); R. Lempert & S. Saltzburg, A Modern Approach to Evidence 395 (2d ed. 1982) (Lempert & Saltzburg).

Although, under common law, the reliability of the co-conspirator's statement was never the primary ground justifying its admissibility, there was some recognition that this

---

[3] As explained by Dean McCormick, the "vicarious" or "representative" admission concept was justified by an agency rationale.   Such admissions were statements of an agent either expressly authorized by a principal or made within the scope of the agent's authority to speak for the principal. See E. Cleary, McCormick on Evidence § 267, pp. 787–788 (3d ed. 1984). In speaking of these statements, I refer here to those by an agent or co-conspirator that are truly hearsay, i. e., used to prove the truth of the matter asserted—not statements that might be considered to be verbal acts of the agency or conspiracy that do not fall within the hearsay category and thus are otherwise admissible.   As the above quotation from Judge Learned Hand suggests, this distinction is not always made.   See McCormick 792.

[4] In United States v. Inadi, 475 U. S. 387, 395–396 (1986), the Court recently emphasized the importance of co-conspirator statements for conspiracy prosecutions.

exemption from the hearsay rule had certain guarantees of trustworthiness, albeit limited ones. This justification for the exemption has been explained:

> "Active conspirators are likely to know who the members of the conspiracy are and what they have done. When speaking to advance the conspiracy, they are unlikely to describe non-members as conspirators, and they usually will have no incentive to misdescribe the actions of their fellow members." Lempert & Saltzburg 395.

See also 4 J. Wigmore, Evidence § 1080a, p. 199 (J. Chadbourn rev. 1972) ("[T]he general idea of receiving vicarious admissions, is that where the third person was, at the time of speaking, in *circumstances that gave him substantially the same interest* to know something about the matter in hand as had the now opponent, and the *same motive* to make a statement about it, that person's statements have approximately the same testimonial value as if the now opponent had made them") (emphasis in original). And the components of the exemption were understood to contribute to this reliability. When making a statement "during the course of" and "in furtherance of" a conspiracy, a conspirator could be viewed as speaking from the perspective of all the conspirators in order to achieve the common goals of the conspiracy, not from self-serving motives. See Davenport, 85 Harv. L. Rev., at 1387. In particular, the requirement that a conspiracy be established by independent evidence also is seen to contribute to the reliability issue. Yet that requirement goes not so much to the reliability of the statement itself, as to the reliability of the process of admitting it: a statement cannot be introduced *until* independent evidence shows the defendant to be a member of an existing conspiracy. See *id.*, at 1390 ("Independent evidence of the conspiracy's existence and of the defendant's participation in it may supply inferences as to the reliability of the declaration"); Lempert & Saltzburg 395.

The Federal Rules of Evidence did not alter in any way this common-law exemption to hearsay.[5] The Rules essentially codify the components of this exemption: Rule 801 (d)(2)(E) provides that the co-conspirator's statement, to be admissible against a party, must be "by a coconspirator of a party during the course and in furtherance of the conspiracy." Moreover, the exemption was placed within the category of "not hearsay," as an admission, in contrast to the hearsay exceptions of Rules 803 and 804. The Advisory Committee explained that the exclusion of admissions from the hearsay category is justified by the traditional "adversary system" rationale, not by any specific "guarantee of trustworthiness" used to justify hearsay exceptions. See Advisory Committee's Notes on Fed. Rule Evid. 801, 28 U. S. C. App., p. 717, 56 F. R. D. 183, 297 (1972); see also Note, Federal Rule of Evidence 801(d)(2)(E) and the Confrontation Clause: Closing the Window of Admissibility for Coconspirator Hearsay, 53 Ford. L. Rev. 1291, 1295, and n. 25 (1985).

More importantly, by explicitly retaining the agency rationale for the exemption, the Advisory Committee expressed its intention that the exemption would remain identical to the common-law rule and that it would not be expanded in any way. The Advisory Committee recognized that this agency rationale had been subject to criticism.[6] The draft-

---

[5] In codifying the common-law exemption, the Rules should be understood to adopt the Court's application in *Glasser* v. *United States*, 315 U. S. 60 (1942), of the exemption's independent-evidence requirement. The Court there examined the evidence apart from the co-conspirator's statement to see whether this evidence would establish Glasser's participation in an existing conspiracy. See *id.*, at 75. In light of my understanding of the history of the co-conspirator exemption from hearsay, I thus disagree with JUSTICE STEVENS' reading of *Glasser*. See *ante*, at 184–185 (concurring opinion).

[6] In the years prior to the adoption of the Federal Rules, this rationale for justifying the exception for co-conspirator statements was criticized. See, *e. g.*, Levie, 52 Mich. L. Rev., at 1165 (defendant will be unable to

ers of the American Law Institute's Model Code of Evidence had gone so far as to abandon the agency justification and had eliminated the "in furtherance of" requirement, observing that "[t]hese statements are likely to be true, and are usually made with a realization that they are against the declarant's interest." Model Code of Evidence, Rule 508(b) commentary, p. 251 (1942). The Advisory Committee, however, declined to accept without reservation a reliability foundation for Rule 801(d)(2)(E).[7]

The Advisory Committee thus decided to retain the agency justification, in general, and the "in furtherance of" language, in particular, as a compromise position. It thought that the traditional exemption appropriately balanced the prosecution's need for a co-conspirator's statements and the defendant's need for the protections against unreliable statements, protections provided by the components of the common-law exemption. See 4 Weinstein & Berger ¶ 801(d)(2)(E)[01], p. 801–235. The Advisory Committee, however, expressed its doubts about the agency rationale and, on the basis of these doubts, plainly stated that the exemption should not be changed or extended: "[T]he agency theory of conspiracy is at

---

force his "alter ego" co-conspirator to take the stand, in order to examine him as to the statement attributed to the defendant, if the co-conspirator invokes his privilege against self-incrimination); see also Note, 53 Ford. L. Rev., at 1296 and nn. 34 and 35. The Advisory Committee's citation of the Levie article reveals the Committee's awareness of this criticism. See Advisory Committee's Notes on Fed. Rule Evid. 801, 28 U. S. C. App., p. 718, 56 F. R. D. 183, 299 (1972).

[7] The reliability justifications for the common-law exemption also had been subject to criticism in the years before the enactment of the Federal Rules of Evidence. See Levie, 52 Mich. L. Rev., at 1165–1166 ("The conspirator's interest is likely to lie in misleading the listener into believing the conspiracy stronger with more members (and different members) and other aims than in fact it has. It is no victory for common sense to make a belief that criminals are notorious for their veracity the basis for law"); see also Davenport, 85 Harv. L. Rev., at 1384–1391; Note, 53 Ford. L. Rev., at 1296 and n. 36. The Advisory Committee was aware of this criticism, too. See n. 6, *supra*.

best a fiction and ought not to serve as a basis for admissibility beyond that already established." Advisory Committee's Notes on Fed. Rule Evid. 801, 28 U. S. C. App., p. 718, 56 F. R. D., at 299. In light of this intention *not* to alter the common-law exemption, the Advisory Committee's Notes thus make very clear that Rule 801(d)(2)(E) was to include *all* the components of this exemption, including the independent-evidence requirement.[8]

## B

Accordingly, when Rule 801(d)(2)(E) and Rule 104(a) are considered together—an examination that the Court neglects to undertake—there appears to be a conflict between the fact that no change in the co-conspirator hearsay exemption was intended by Rule 801(d)(2)(E) and the freedom that Rule 104(a) gives a trial court to rely on hearsay in resolving preliminary factual questions. Although one must be somewhat of an interpretive funambulist to walk between the conflicting demands of these Rules in order to arrive at a resolution

---

[8] The legislative history of Rule 801(d)(2)(E) also confirms that the Rule was intended to make no change in the common-law exemption. See Hearings on Proposed Rules of Evidence before the Special Subcommittee on Reform of Federal Criminal Laws of the House Committee on the Judiciary, 93d Cong., 1st Sess., 249 (1973) (statement of Chief Judge Henry J. Friendly: "While there is nothing wrong in [801(d)(2)(E)], it says nothing that would help anybody at all. It is just as bare as can be. It does not advance matters a bit"); Hearings on Federal Rules of Evidence before the Senate Committee on the Judiciary, 93d Cong., 2d Sess., 318 (1974) (statement of Herbert Semmel: "Finally, the House bill would not affect the admissibility of statements by defendants, by co-conspirators or by agents of the defendant all of which would be admissible under 801(d)(2)"). In particular, the history indicates that the independent-evidence requirement was understood to be retained in the Rule. *Id.*, at 162 (statement of Richard H. Keatinge and John T. Blanchard: "Rule 801(d)(2)(E) does not appear to disturb the conventional position that the judge must make the preliminary determination of the adequacy of independent evidence of a conspiracy, the nature of the statements and the party's membership in the conspiracy").

that will satisfy their respective concerns, this effort is far to be preferred over accepting the easily available safety "net" of Rule 104(a)'s "plain meaning." The purposes of *both* Rules can be achieved by considering the relevant preliminary factual question for Rule 104(a) analysis to be the following: "whether a conspiracy that included the declarant and the defendant against whom a statement is offered has been demonstrated to exist on the basis of evidence *independent of the declarant's hearsay statements*" (emphasis added). S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 735 (4th ed. 1986). This resolution sufficiently answers Rule 104(a)'s concern with allowing a trial court to consider hearsay in determining preliminary factual questions, because the only hearsay not available for its consideration is the statement at issue. The exclusion of the statement from the preliminary analysis maintains the common-law exemption unchanged.

As the Court recognizes, *ante,* at 177, in the more than 10 years since the enactment of the Federal Rules of Evidence, the Courts of Appeals, almost uniformly, have found no conflict between Rule 104(a) and the independent-evidence requirement understood to adhere in Rule 801(d)(2)(E).[9] In-

---

[9] Besides the Court of Appeals for the Sixth Circuit, only the Court of Appeals for the First Circuit has accepted the argument that Rule 104(a) permits consideration of the co-conspirator's statement in determining the existence of a conspiracy. See *United States* v. *Martorano,* 557 F. 2d 1, and, on rehearing, 561 F. 2d 406 (1977), cert. denied, 435 U. S. 922 (1978). The First Circuit, however, qualifies its deviation from the traditional rule. See 561 F. 2d, at 408 ("But under any view of the law we would, as we said in our original opinion, require significant independent evidence of the existence of the conspiracy, deviating from the *Glasser* practice only to the extent of permitting the district court to consider the independent evidence in the light of the color shed upon it by the highly trustworthy and reliable portions of the hearsay utterance seeking admission"). Several courts have rejected explicitly this inroad into the common-law exception. See, *e. g., United States* v. *James,* 590 F. 2d 575, 581 (CA5) (en banc), cert. denied, 442 U. S. 917 (1979); *United States* v. *Bell,* 573 F. 2d 1040, 1044 (CA8 1978); *In re Japanese Electronic Products*

deed, some courts have rejected the suggestion that Rule 104(a) has changed this component of the common-law exemption, because, like the Advisory Committee, they recognize the incremental protection against unreliable statements that this requirement gives to defendants. See, *e. g.*, *United States* v. *Bell*, 573 F. 2d 1040, 1044 (CA8 1978). Yet the Court cavalierly disregards these years of interpretative experience, as well as the rich history of this exemption, and arrives at its conclusion solely on the basis of its "plain meaning" approach.

## II

The Court's second argument in favor of abandonment of the independent-evidence rule might best be characterized as an attempt at pragmatic or "real world" analysis. The Court suggests that, while a co-conspirator's statement might be presumed unreliable when considered in isolation, it loses this unreliability when examined together with other evidence of the conspiracy and the defendant's participation in it. *Ante*, at 179–180. In the Court's view, such a consideration of the statement will reveal its probative value, as the facts of this case demonstrate. Proceeding in this "real world" vein, the Court believes that the trial court is capable of detecting any remaining unreliability in the co-conspirator's statement and that the defendant is afforded the opportunity to point

*Antitrust Litigation*, 723 F. 2d 238, 261 (CA3 1983), rev'd on other grounds *sub nom. Matsushita Electric Industrial Co.* v. *Zenith Radio Corp.*, 475 U. S. 574 (1986). Other courts continue to adhere to the traditional rule. See *United States* v. *DeFillipo*, 590 F. 2d 1228, 1236, and n. 12 (CA2), cert. denied, 442 U. S. 920 (1979); *United States* v. *Portsmouth Paving Corp.*, 694 F. 2d 312, 320 (CA4 1982); *United States* v. *Rabb*, 752 F. 2d 1320, 1325 (CA9 1984), cert. denied, 471 U. S. 1019 (1985); *United States* v. *Austin*, 786 F. 2d 986, 989–990 (CA10 1986). Still other courts, while noting the apparent conflict between Rule 104(a) and the independent-evidence requirement, have not passed on the issue. See *United States* v. *Jackson*, 201 U. S. App. D. C. 212, 229, n. 34, 627 F. 2d 1198, 1215, n. 34 (1980); *United States* v. *Santiago*, 582 F. 2d 1128, 1133, n. 11 (CA7 1978).

out any shortcomings of the out-of-court statement. *Ante*, at 180.

I, too, prefer an approach that includes a realistic view of problems that come before the Court. See, *e. g.*, *Lee* v. *Illinois*, 476 U. S. 530, 547–548 (1986) (dissenting opinion). I am inclined, however, to remain with the traditional exemption that has been shaped by years of "real world" experience with the use of co-conspirator statements in trials and by a frank recognition of the possible unreliability of these statements.

As explained above, despite the recognized need by prosecutors for co-conspirator statements, these statements often have been considered to be somewhat unreliable. It has long been understood that such statements in some cases may constitute, at best, nothing more than the "idle chatter" of a declarant or, at worst, malicious gossip. See 4 Weinstein & Berger ¶ 801(d)(2)(E)[01], p. 801–235. Moreover, when confronted with such a statement, an innocent defendant would have a difficult time defending himself against it, for, if he were not in the conspiracy, he would have no idea why the conspirator made the statement. See *United States* v. *Stipe*, 517 F. Supp. 867, 871 (WD Okla.), aff'd, 653 F. 2d 446 (CA10 1981) ("The dangers that an accused may be confronted with numerous statements made by someone else which he never authorized, intended, or even knew about . . . cannot be ignored"). Even an experienced trial judge might credit an incriminatory statement that a defendant could not explain, precisely because the defendant had no ready explanation for it. Because of this actual "real world" experience with the possible unreliability of these statements, the Advisory Committee retained the agency rationale for this exemption in Rule 801(d)(2)(E), as well as the safeguards, albeit limited, against unreliability that this rationale provided the defendant. The independent-evidence requirement was one such safeguard.

If this requirement is set aside, then one of the exemption's safeguards is lost. From a "real world" perspective, I do not believe that considering the statement together with the independent evidence will cure this loss. Contrary to the Court's suggestion, the situation in which a trial court now commonly will rely on the co-conspirator's statement to establish the existence of a conspiracy in which the defendant participated will not be limited to instances in which the statement constitutes just another "piece of evidence," to be considered as no more important than the independent evidence. Rather, such a statement will serve the greatest purpose, and thus will be introduced most frequently, in situations where *all* the other evidence that the prosecution can muster to show the existence of a conspiracy will *not* be adequate. In this situation, despite the use of hearsay admissible under other exceptions and the defendant's and other conspirators' actions, the co-conspirator's statement will be necessary to satisfy the trial court by a preponderance of the evidence that the defendant was a member of an existing conspiracy. Accordingly, the statement will likely *control* the interpretation of whatever other evidence exists and could well transform a series of innocuous actions by a defendant into evidence that he was participating in a criminal conspiracy. This is what "bootstrapping" is all about. Thus, the Court removes one reliability safeguard from an exemption, even though the situation in which a co-conspirator's statement will be used to resolve the preliminary factual questions is that in which the court will rely *most* on the statement.

It is at least heartening, however, to see that the Court reserves the question whether a co-conspirator's statement alone, without *any* independent evidence, could establish the existence of a conspiracy and a defendant's participation in it. *Ante,* at 181; see also *ante,* at 184 (STEVENS, J., concurring). I have no doubt that, in this ultimate example of "bootstrapping," the statement could not pass the preliminary factual test for its own admissibility, even under the

Court's reformulation. For the presumptively unreliable statement would have no corroborative independent evidence that would bring out its probative value. See *ante*, at 179–180. If the statement alone could establish its own foundation for admissibility, a defendant could be convicted of conspiracy on the basis of an unsupported remark by an alleged conspirator—a result that surely the Court could not countenance and that completely cuts the exception adrift from its agency mooring.[10]

### III

The Court answers today a question left open in *United States* v. *Inadi*, 475 U. S. 387 (1986). There, while observing that the Confrontation Clause usually required the production of a declarant or a showing of his unavailability so that his out-of-court statement could be admitted against a defendant, the Court concluded that this requirement was not constitutionally mandated in the case of a nontestifying co-conspirator's statement admitted under Rule 801(d)(2)(E). 475 U. S., at 400. The Court in *Inadi* did not have occasion to reach the issue of the reliability of such statements for Confrontation Clause purposes, and said so specifically. *Id.*, at 391, n. 3. Today, the Court concludes that the Constitution does not require any independent "indicia of reliability" for such statements. See *ante*, at 182. Relying upon *Ohio* v. *Roberts*, 448 U. S. 56 (1980), the Court reasons that no such "indicia" are needed to satisfy Confrontation Clause concerns, because the admissibility of these statements " 'falls within a firmly rooted hearsay exception.' " *Ante*, at 183, quoting *Ohio* v. *Roberts*, *supra*, at 66. In a footnote, the Court dismisses any suggestion that it is altering the co-

---

[10] Because in this case the District Court did not consider whether, excluding Lonardo's out-of-court statements, there was enough independent evidence to establish petitioner's participation in the conspiracy, I would remand the case for a resolution of the preliminary factual questions on the basis of an evaluation of this evidence under the common-law standard as adopted by Rule 801(d)(2)(E).

conspirator hearsay exemption: in its view, the exemption essentially remains the same, and what has changed is merely a "method of proof." *Ante,* at 184, n. 4 (emphasis omitted).

In *Roberts* the Court did observe that, for Confrontation Clause purposes, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." 448 U. S., at 66. To understand the significance of this statement, however, it is important to remember why hearsay exceptions satisfy the reliability concern of that Clause. The Court in *Roberts* explained that "accuracy in the factfinding process" is a central concern of the Confrontation Clause that cross-examination normally serves. *Id.,* at 65. This concern is sometimes satisfied when evidence is admitted under a hearsay exception, even where no cross-examination of the declarant occurs at trial. This is because "'hearsay rules and the Confrontation Clause are generally designed to protect similar values,'" *id.,* at 66, quoting *California* v. *Green,* 399 U. S. 149, 155 (1970), and because, with respect to a particular hearsay exception, there are adequate "indicia of reliability" of the out-of-court statement. These indicia serve to guarantee the trustworthiness of the declarant's statement and thus promote the accuracy of the trial—a function otherwise fulfilled by cross-examination. Thus, to answer the Confrontation Clause's concern for reliability with respect to a particular hearsay exception, one must examine what, if any, "indicia of reliability" it possesses. In addition, one must also see how "firmly rooted" the exception is, which suggests that, through experience in its use, the exception has proved to promote the "accuracy of the factfinding process." See generally Note, 53 Ford. L. Rev., at 1306–1307.

The weakness of the Court's assertion—that the Confrontation Clause concern about reliability vanishes because Rule 801(d)(2)(E)'s exemption of a co-conspirator's statement from the hearsay definition is a "firmly rooted hearsay exception"—thus becomes immediately apparent. First, as has

been explained and as its inclusion under the admissions rubric would indicate, this exemption has never been justified primarily upon reliability or trustworthiness grounds and its reliability safeguards are not extensive. See also Note, 53 Ford. L. Rev., at 1311–1312. Thus, it is surprising that, without any hesitation, the Court in this case turns to the "firmly rooted hearsay exception" rationale, which is based upon a confidence in adequate "indicia of reliability."

Second, and more astounding, is the Court's reliance upon the "firmly rooted hearsay exception" rationale as it simultaneously removes from the exemption one of the few safeguards against unreliability that it possesses. The Court cannot at all escape from this contradiction by dismissing its alteration of the exception as simply a change in "method of proof." Because the "firmly rooted hearsay exception" is defined in terms of its "indicia of reliability" for Confrontation Clause purposes, a removal of one of these "indicia" significantly transforms the co-conspirator exemption in a relevant respect. In addition, this change takes away from the exemption any weight that experience with its use by courts may have given it, thus undermining its "firmly rooted" status. In sum, the Court cannot have it both ways: it cannot transform the exemption, as it admittedly does, *and* then avoid Confrontation Clause concerns by conjuring up the "firmly rooted hearsay exception" as some benign genie who will extricate the Court from its inconsistent analysis.

With such a transformation in the co-conspirator hearsay exemption having been made, the Court's reliance upon *Roberts'* language concerning the "firmly rooted hearsay exception" is utterly misplaced. Rather, the pertinent language from *Roberts* becomes the sentence following the one quoted by the Court: "In other cases [where there is no "firmly rooted hearsay exception"], the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." 448 U. S., at 66. This showing, I believe, would involve an examination of the statement in terms

of the factors outlined in *Dutton* v. *Evans*, 400 U. S. 74, 88–89 (1970) (plurality opinion); see also Note, 53 Ford. L. Rev., at 1302. Intellectual honesty thus demands, at the very least, that, having changed this hearsay exemption, the Court remand the case to allow the lower courts to explore any "particularized guarantees of trustworthiness" the statement might have.[11]

I respectfully dissent.

---

[11] Petitioner argues that, were the co-conspirator exemption to remain unaltered with respect to the independent-evidence rule, the exemption would satisfy the Confrontation Clause's concern for adequate "indicia of reliability," except in special cases where the defendant could show that the co-conspirator's statement was unusually unreliable and was crucial to the prosecution's case. Brief for Petitioner 33–39. Given the fact that the reliability foundation of this exemption is not as strong as that for traditional hearsay exceptions, I am inclined to agree that the Confrontation Clause might well demand a particularized reliability analysis in cases where a statement is a significant part of the prosecution's case, before such statements could be admitted over a defendant's objection. See Note, 53 Ford. L. Rev., at 1327 (arguing that such statements should not be admitted when declarant is unavailable, even when there is independent evidence of conspiracy, if statements are "crucial to the prosecutor's case or devastatingly prejudicial to the defendant"); see also Davenport, 85 Harv. L. Rev., at 1401–1404 (describing rules of admissibility of co-conspirator's statements in order to satisfy Confrontation Clause concerns). The Court's removal of the requirement of a showing of unavailability of the declarant for the admissibility of such statements in *United States* v. *Inadi*, 475 U. S. 387 (1986), which effectively could prevent a defendant from cross-examining the declarant, increases the importance of the reliability prong of Confrontation Clause analysis.