In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3219

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELVIS C. MEDRANO,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 2:20-cr-00017 — **James Patrick Hanlon**, *Judge.*

———————————

ARGUED SEPTEMBER 7, 2023 — DECIDED OCTOBER 16, 2023

———————————

Before BRENNAN, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

BRENNAN, *Circuit Judge.* After the government presented substantial evidence against Elvis Medrano, a jury found him guilty of conspiracy to possess with intent to distribute controlled substances. He challenges that conviction and asks for a new trial. He argues that a trial exhibit—screenshots of a text

message conversation between him and another individual—should not have been admitted because the conversation was hearsay. Given the considerable evidence introduced against Medrano, any error in admitting that exhibit was harmless. So, we affirm the judgment of the district court.

**I**

**A**

From March 2020 until his arrest in August 2020, Medrano engaged in a conspiracy to distribute mixtures and substances containing detectable amounts of methamphetamine, cocaine, and 3,4-Methylenedioxymethamphetamine (MDMA) in the Southern District of Indiana. A drug supplier shipped drugs from California to Indiana, where Medrano and others used the United States Post Office and a post office employee to distribute the drugs in Indiana. Several other individuals were involved.

During this time, Medrano was a fugitive. Officers tracked and attempted to arrest him on several occasions. On June 1, 2020, officers found Medrano at a motel in Indiana. When officers attempted to arrest him, he fled and led officers on a high-speed chase. Medrano evaded arrest, but officers found his truck, and took a co-conspirator, Nikki Foster, into custody. They later obtained a warrant to search Medrano's motel room. There officers found his burner phone, as well as drug paraphernalia including scales, baggies, and substances used to dilute methamphetamine. They also recovered the key to a post office box, which officers later determined Medrano had received from Christina Johnson, a post office employee.

Around July 2020, officers tracked Medrano to another motel in Indiana. Once again, Medrano led officers on a high-speed chase and avoided arrest. Officers executed a search warrant for Medrano's motel room and found drug paraphernalia, including substances used to dilute methamphetamine, a vacuum sealer, rubber bands, baggies, a pipe, a scale with calibrating weights, a gas stove for cooking methamphetamine, and a drug ledger. They also located another phone belonging to Medrano.

Officers finally arrested Medrano at a residence in Indiana. There they discovered methamphetamine, as well as drug paraphernalia, including baggies, scales, and substances used to dilute methamphetamine. They also found a third phone belonging to Medrano. This phone contained text messages between Medrano and a contact identified as "Rob Marshalltown." The text messages were later introduced at trial as Exhibit 218(B).

**B**

A grand jury returned a superseding indictment charging Medrano with conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] The district court held a four-day trial.

At trial, the government introduced overwhelming evidence against Medrano. This included the testimony of

---

[1] Medrano was also indicted for and convicted of being a felon in possession of ammunition. At oral argument he confirmed he does not challenge that conviction, which would stand regardless of our decision on the admission of Exhibit 218(B). Oral Argument at 2:00–2:35.

several law enforcement officers, post office employees and inspectors, and expert witnesses and lab technicians. The government introduced several exhibits, including text messages between members of the conspiracy, drugs, drug paraphernalia, photos of drugs and drug paraphernalia, postal service tracking reports and receipts, and photos of drugs in the postal boxes. Motel surveillance videos were shown to the jury. Two cooperating witnesses testified. Christina Johnson, a postal employee who Medrano recruited to the conspiracy, testified that she gave him access to post office boxes for others to ship him drugs and that he asked her to track drug packages. And Brandy Gregory, another co-conspirator, testified that she witnessed Medrano and others selling and purchasing drugs on multiple occasions.

Medrano objected to the admission of several trial exhibits, but here only a text message conversation with Marshalltown, Exhibit 218(B), is at issue. At trial, Medrano argued the text message conversation was hearsay. The district court overruled his objection, concluding that the exhibit was admissible.

After trial, the jury found Medrano guilty. The district court sentenced him to 360 months' imprisonment, and he timely appeals.

## II

Medrano objects to the district court's admission of the text messages between him and Marshalltown as non-hearsay statements of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E). He argues that the statements are hearsay and represent only a buyer-seller relationship, not a co-conspirator relationship.

Because "decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court," *Pittman ex rel. Hamilton v. County of Madison*, 970 F.3d 823, 829 (7th Cir. 2020), they are reviewed for abuse of discretion. We will reverse a district court's factual determination only if it is clearly erroneous. *United States v. Powers*, 75 F.3d 335, 340–41 (7th Cir. 1996). "We will not reverse if the error is harmless in light of the trial record as a whole." *Viramontes v. City of Chicago*, 840 F.3d 423, 430 (7th Cir. 2016).

Rule 801(d)(2)(E) provides that a statement is not hearsay if it was "offered against an opposing party" and "made by the party's coconspirator during and in furtherance of the conspiracy." The government must prove by a preponderance of the evidence that "(1) a conspiracy existed; (2) the defendant and declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Singleton*, 125 F.3d 1097, 1107 (7th Cir. 1997).

As an initial matter, neither party addressed whether independent evidence supported the district court's determination that Marshalltown was a member of the conspiracy. In *Bourjaily v. United States*, the Supreme Court, looking to the Federal Rules of Evidence, held that preliminary questions concerning admissibility of evidence "shall be determined by the [district] court" and that the district court may consider any evidence it wishes, unhindered by considerations of admissibility in making those determinations. 483 U.S. 171, 175–76 (1987). The Court held, however, that it "need not decide … whether the courts below could have relied solely upon … hearsay statements to determine that a conspiracy had been established by a preponderance of the evidence." *Id.*

at 181. Since then, this court has made clear that the statement alone is not sufficient to establish a conspiracy exists and that some independent evidence must be offered. *See, e.g.*, *United States v. Quiroz*, 874 F.3d 562, 570 (7th Cir. 2017) (citing *United States v. Lindemann*, 85 F.3d 1232, 1239 (7th Cir. 1996)).

While abundant evidence supported the finding that Medrano participated in a larger conspiracy, notably, the government did not provide independent evidence that Medrano conspired with Marshalltown or that Marshalltown otherwise participated in the larger conspiracy. The district court stated it "studied" Exhibit 218(B) and "in the context of th[at] specific exhibit, and with all of the other facts and circumstances of the evidence that has been admitted," it found that "the factors articulated for co-conspirator statements are satisfied." This raises the question whether a district court can rely solely on hearsay statements and evidence of the larger conspiracy involving the defendant, but not the declarant, to find that a conspiracy between the defendant and declarant existed.

We need not resolve the independent evidence question because any error in admitting Exhibit 218(B) was nonconstitutional harmless error. Though Medrano argued at trial and argues on appeal that the admission of the exhibit violated the Confrontation Clause—and thus, the admission was a constitutional error—the text messages in that exhibit are nontestimonial, and thus do not implicate the Constitution. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004) (recognizing "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" in contrast to "a casual remark to an acquaintance").

A nonconstitutional error committed at trial that is unlikely to have altered the outcome of the trial is harmless.

*Kotteakos v. United States*, 328 U.S. 750, 764–65 (1946). As with much of American law, harmless error began with English common law. The English harmless error rule provided that the "erroneous admission or rejection of a piece of evidence was not a sufficient ground for setting aside the verdict and ordering a new trial unless upon all the evidence it appeared to the judges that the truth had thereby not been reached." JOHN HENRY WIGMORE, 2 WIGMORE ON EVIDENCE: EVIDENCE IN TRIALS AT COMMON LAW § 21, at 1 (4th ed. 2023). In contrast to harmless error, an error that would have altered the outcome of the trial or otherwise deprived the defendant of a fair trial is prejudicial. *See United States v. Harden*, 893 F.3d 434, 451–52 (7th Cir. 2018); *United States v. Lauderdale*, 571 F.3d 657, 661 (7th Cir. 2009).

Courts use two approaches to distinguish between harmless error and prejudicial error. The first looks to whether the jury reached the correct result, despite the trial court's error. *See, e.g.*, WIGMORE § 21, at 9 & n.17 (collecting cases). The second looks to whether the trial court's error affected the jury's deliberation or contributed to the judgment. *See id.* at 10. Our court has adopted the second approach. *See, e.g.*, *United States v. Diggs*, 81 F.4th 755, 757–58 (7th Cir. 2023); *United States v. Gomez*, 763 F.3d 845, 863 (7th Cir. 2014) (en banc).

Because Medrano challenges a nonconstitutional trial error, we apply the second approach. That approach is memorialized in Federal Rule of Criminal Procedure 52(a), which provides, "[a]ny error … that does not affect substantial rights must be disregarded." Thus, "[t]he test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Curtis*, 781

F.3d 904, 911 (7th Cir. 2015). "We will affirm if 'the error had no substantial influence on the verdict' because 'other untainted incriminating evidence is overwhelming.'" *United States v. Chaparro*, 956 F.3d 462, 482 (7th Cir. 2020) (quoting *United States v. Zuniga*, 767 F.3d 712, 717 (7th Cir. 2014)). So "[e]ssentially, an evidentiary error is harmless if it did not have a substantial influence on the verdict." *United States v. Pulliam*, 973 F.3d 775, 782 (7th Cir. 2020), *as amended* (Sept. 8, 2020). The government bears the burden of proving that an error was harmless. *United States v. Hidalgo-Sanchez*, 29 F.4th 915, 929 (7th Cir. 2022).

While the line between harmless and prejudicial error can be difficult to draw, these facts fall well on the harmless side. The evidence of Medrano's guilt was overwhelming. *See* WILLIAM J. BAUER PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT §§ 5.09–5.10 (2020 ed.) (listing the elements of conspiracy). A conspiracy existed. The government presented multiple sets of text messages between members of the conspiracy and Medrano discussing drug trafficking. Postal employees and inspectors testified to the existence of the conspiracy and how Medrano and others used the post office to further their conspiracy. And a co-conspirator, Brandy Gregory, testified that she witnessed Medrano and others on multiple occasions selling and purchasing drugs.

Medrano was a member of the conspiracy. Postal employees and inspectors also testified to how Medrano recruited a post office employee and utilized the post office to further his conspiracy. Christina Johnson, the postal employee who Medrano recruited for the conspiracy, testified that she gave Medrano access to post office boxes for others to ship him drugs and that Medrano asked her to track drug packages.

Several law enforcement officers testified that they chased Medrano as he evaded arrest and searched Medrano's different motel rooms. The government presented evidence of drugs, drug paraphernalia, and photos of drugs and drug paraphernalia taken from Medrano's motel rooms.

In addition to Medrano's acts and declarations, the acts and declarations of co-conspirators inculpated him where they were done in furtherance of the objects of the conspiracy, were done during the existence of the conspiracy, and were reasonably foreseeable. *United States v. Santiago*, 582 F.2d 1128, 1143 (7th Cir. 1978) For example, postal employees and inspectors testified about how co-conspirators used the post office to further their conspiracy. To corroborate that testimony, the government presented postal service tracking reports and receipts, as well as photos of drugs in postal boxes. Such acts, although not done by Medrano, implicate him and were used as evidence against him at trial.

*         *         *

The disputed exhibit was one small piece of the substantial physical, electronic, and testimonial evidence supporting a conviction against Medrano on the drug count. Even assuming the district court erred in admitting the exhibit, any error was harmless. Accordingly, we AFFIRM the judgment of the district court.