849 F.2d 607
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lee Allen IAGER, Defendant-Appellant.
 No. 87-5582.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 11, 1988.
Decided: June 9, 1988.
 
 Steven P. Lemmey (Shelly Mintz; Joseph, Greenwald & Laake, P.A., on brief), for appellant.
 Katharine J. Armentrout, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 A jury convicted Lee Allen Iager, defendant, of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and (2). He was sentenced to a total of nine years. Defendant appeals contending that the district court committed reversible error in admitting testimony regarding his prior arrest in September, 1984 on charges which were ultimately dropped. He argues that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. F.R.E. 403. Defendant also contends that in fashioning his sentence, the district court improperly considered defendant's decision to stand trial.
 
 
 2
 We are not persuaded by these arguments and we affirm.
 
 I.
 
 3
 The count of the indictment charging conspiracy alleged that Iager and James Lewis Lanham had conspired with one another and Abu Yahya Siddiqui, an unindicted co-conspirator, and diverse other persons, known and unknown, to distribute and to possess with intent to distribute cocaine. The evidence at trial established that the government learned of the conspiracy through Siddiqui, an informant who arranged to purchase one-half ounce of cocaine from Lanham to be supplied to Lanham by defendant. Neither defendant nor Lanham was aware that on May 14, 1985 when Siddiqui arranged the purchase, Siddiqui was wired with recording equipment. During Siddiqui's conversation with Lanham, Lanham informed Siddiqui that defendant had been arrested in September 1984 at the home of Roger Hurd, another co-conspirator, and that approximately four ounces of cocaine were seized at Hurd's residence at the time of arrest. The charges against defendant from the September, 1984 arrest were ultimately dropped.
 
 
 4
 Lanham, who pleaded guilty and was sentenced to three years, testified that he had arranged a drug transaction on May 22, 1985 in which defendant supplied one-half ounce of cocaine to Lanham for Lanham to sell to Siddiqui. While defendant made a last-minute change in the planned time and location of the transaction, the sale was ultimately made at a restaurant in the College Park area of Maryland.
 
 
 5
 Lanham further testified without objection that defendant had been arrested in September 1984. When Lanham was asked how he knew of that arrest, defendant objected on hearsay grounds. The objection was overruled and Lanham testified that defendant had informed him of the arrest and had explained that it was stupid of defendant to have been present at a scene where drugs were located.
 
 
 6
 Defendant presented no defense and the jury found him guilty. During the sentencing hearing, defense counsel at several points raised defendant's concern that he not be punished for having exercised his constitutional right to stand trial. Specifically, defense counsel first asked the court to consider defendant's decision not to testify and thus not to perjure himself. The court responded that defendant was entitled to no credit for that decision. Defense counsel then stated that he hoped the court would not hold against defendant his decision to stand trial. The court again responded that defendant is not entitled to credit, but that the court "certainly wouldn't sentence him because of that." Defense counsel told the judge that defendant had heard that persons convicted following trial "pay rent" for exercising their right to trial rather than pleading guilty. The court responded
 
 
 7
 That is not talking wrong, either, because the Courts are--if he is so obviously guilty, then the Court--and the Court feels that you wasted their time, then the Court says, you don't get any credit for coming forth and being clean. You have to go through the expense of a trial, and the Court says, you get what happens to you; but that has been the system that I cchave known all of twenty years.
 
 
 8
 Finally, when listing factors for the judge to consider in sentencing, defense counsel again included defendant's right to go to trial. Again the judge explained that defendant would neither get credit nor be penalized for exercising that right.
 
 
 9
 Defendant was sentenced to a term of six years for his conviction on the conspiracy count to run consecutively with a term of three years for his conviction on the possession with intent to distribute and distribution counts, for a total of nine years. Defendant could have been sentenced to a total of forty-five years on his three convictions.
 
 II.
 
 10
 Defendant argues that the evidence of his September 1984 arrest was inadmissible because it was prior bad act evidence not falling within a recognized exception, F.R.E. 404(b), and second, that even if the arrest did fall within a recognized exception, the probative value of the arrest was substantially outweighed by the danger of unfair prejudice. F.R.E. 403.
 
 
 11
 While defendant's failure to raise his current grounds for objection to the admission of the evidence at trial is alone sufficient to dispose of this issue, see United States v. Parodi, 703 F.2d 768, 783 (4 Cir.1983) ("The mandate for specificity in [Rule 103] imposes upon the objecting party the obligation to 'object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.' " (citation omitted)), we think that the evidence was properly admitted. It was relevant to defendant's involvement in the conspiracy, cf. Bourjaily v. United States, --- U.S. ----, 107 S.Ct. 2775, 2781 (1981) ("We think that there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy"). His presence and arrest at the time of the seizure of the drugs and his subsequent admission of his knowledge of the drugs were material and probative on the issue of his knowing participation in a conspiracy to distribute cocaine. We cannot say that the district judge abused his discretion in concluding that the probative value of the evidence outweighed its prejudicial effect. In any event, any error in admission of the evidence was harmless since Hurd testified fully about the arrest and the fact that defendant had supplied him with cocaine for resale.
 
 III.
 
 12
 We see no merit in the argument that the district court impermissibly "punished" defendant for exercising his constitutional right to stand trial. A review of the record reveals the fabricated nature of this claim. The district court judge was understandably confused as to the precise point of defense counsel's repeated inquiries in this regard since defendant is obviously not entitled to any credit for standing trial without perjuring himself. In addition it is apparent that all of the district court's comments explaining that had defendant pled guilty he may have received a somewhat lighter sentence were made in response to persistent inquiries by defense counsel. While it is true that defendant's decision to stand trial is not a permissible factor to consider in sentencing, United States v. Martell, 335 F.2d 764, 766 (4 Cir.1964) (dictum), a review of the record belies the claim that the district court did consider this factor. We simply cannot convert the district judge's statement that defendant might have received credit had he pleaded guilty into an admission that he was receiving a punitive sentence because he elected to be tried.
 
 
 13
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 14
 Samuel Butler in Hudibras remarked on the difficulty sometimes dealt with by lawyers (and judges) in distinguishing and dividing a hair " 'twixt South and South-West side." S. Butler, Hudibras, pt. I, canto I, line 68 (1663). Judge Hargrove had such a problem and has made valiant efforts even to go south-southwest. However, he labored under one misimpression saying:
 
 
 15
 I will tell you this, had he pled guilty, he might have made out better. Those are the facts of life in criminal cases. This is why Mr. Lanham did much better. I don't know what he got. I have no idea; but those are the facts of life in criminal trials.
 
 
 16
 When you come in straightforward and you plead, the Court gives you more consideration.
 
 
 17
 Judge Hargrove erred when he said: "Had he pled guilty, he might have made out better." It approaches sophistry to say in one breath that one may not be punished for exercising one's constitutional right to stand trial, and, then to say with the other, but, because he has demonstrated repentance by pleading guilty, he may have made out better.
 
 
 18
 Once again we are presented with a case where the defendant evokes little sympathy insofar as the crime he committed was concerned. Nevertheless, like any criminal defendant, he is entitled to expect and demand fair treatment. Here the nine year sentence out of a possible forty-five does not sound unduly harsh. However, the government had been ready to recommend only nine years, and several co-defendants who pleaded guilty got substantially lighter sentences.
 
 
 19
 The case reeks of possible application of a proscribed rule which would allow the defendant's standing trial to be used against him. I would require remand for resentencing, and, while I do not believe it should be required by us, knowing Judge Hargrove's well merited reputation for fairness, I can well imagine that he would prefer that the resentencing be accomplished by some other member of the United States District Court for the District of Maryland.
 
 
 20
 I respectfully dissent.