981 F.2d 1252
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Ramon SARMIENTO, Defendant-Appellant.
 No. 92-5125.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: December 15, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CR-91-21-C)
 ARGUED: Kevin Lee Barnett, Law Offices of Harold J. Bender, Charlotte, North Carolina, for Appellant.
 Kenneth Davis Bell, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 ON BRIEF: Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.N.C.
 Affirmed.
 Before PHILLIPS, WILKINSON, and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 On September 27, 1991, Ramon Sarmiento was convicted for possession of cocaine with the intent to distribute, and for conspiracy to do the same. On appeal, Sarmiento contends that the district court erred in admitting taped phone statements by one of his alleged coconspirators, who mentioned Sarmiento as part of the conspiracy. Specifically, he argues that these tapes were not admissible under Fed.R.Evid. 801(d)(2)(E), because the government failed to prove that the declarant was a co-conspirator with Sarmiento. We find, however, that there was ample evidence linking the declarant to Sarmiento's drug operation, both from the taped phone conversations themselves and from independent testimony by another of Sarmiento's coconspirators. Accordingly, we affirm the judgment of conviction.
 
 I.
 
 2
 The primary evidence that the government introduced at trial against Ramon Sarmiento was the testimony of Ms. Denise Lynn Jewell, herself a participant in the drug conspiracy. Ms. Jewell, who was living in New York City at the time, testified that she first met Ramon Sarmiento while she was visiting Florence, South Carolina in November 1990. At that time, she gave him her phone number so that he could call her when he was in New York.
 
 
 3
 In January of 1991, Ramon Sarmiento called Ms. Jewell in New York and asked her if she would transport a package to South Carolina. According to Jewell, he promised to pay her travel expenses, plus $1000. She agreed. Sarmiento instructed her to meet him at a New York store called The Boutique, where she was to ask for the storeowner, "a guy named Juan [Last Name Unknown]." Ms. Jewell did as she was told. At The Boutique, she was met by Juan LNU, Ramon Sarmiento, and another man named Juan Perez. According to Jewell, Ramon Sarmiento called Juan Perez from the back of the store, and Perez came out with a shoebox containing what turned out to be a kilogram of cocaine. Perez and Jewell then took a taxi to Juan LNU's apartment, where they stuffed the cocaine into the pant leg of a pair of jeans that Jewell had packed for the trip.
 
 
 4
 Together, Perez and Jewell drove back to The Boutique, where Ramon Sarmiento told Jewell what to do with the cocaine once she arrived in Florence, South Carolina. From The Boutique, Perez and Jewell returned to Juan LNU's apartment, picked up her luggage, and took a cab to the airport. While connecting in Charlotte, North Carolina, Jewell was approached by a policeman, consensually searched, and arrested when the policeman discovered the cocaine.
 
 
 5
 Ms. Jewell immediately agreed to help the police catch her accomplices. From Charlotte, she called her roommate in New York, learned that Ramon Sarmiento had been trying to reach her, and called Ramon at the phone number he had left. The number turned out to be for Juan LNU's apartment. When Juan LNU answered, Denise Jewell made up a story that immigration agents had detained Juan Perez in the Charlotte airport, that she had "the suitcases," and that she was going to a Charlotte hotel. Juan LNU told Jewell that Ramon had gone to South Carolina, and gave her Ramon's beeper num ber. Juan LNU also instructed her to get in touch with Ramon's brother Fernando so that he could pick her up.
 
 
 6
 Ms. Jewell called Ramon's beeper number, left a number where she could be reached, and waited. Fernando Sarmiento returned her call. He told Jewell to wait for him at a hotel near the Charlotte airport. Fernando did not mention Ramon during this conversation.
 
 
 7
 Ms. Jewell then called Juan LNU a second time. She continued to act as if she was very nervous about the cocaine, and complained repeatedly about having to wait for the Sarmiento brothers to pick it up: "I don't want that, that thing here. Now, that guy is going to have to take it from here." Juan LNU assured her that Fernando had spoken to Ramon, and that Fernando would be at the hotel soon to pick up the cocaine: "He went out there to get you.... He knows where you are.... He'll take it himself from there." Meanwhile, the police were setting up a sting at the Charlotte hotel. When Fernando Sarmiento did eventually arrive to pick up the cocaine, the police arrested him and his driver, Herbert McDaniel. Ms. Jewell then placed one last call to Juan LNU in New York and told him that Fernando had taken the cocaine, but had not paid her. Juan LNU assured her repeatedly that Ramon would make good on his promise to pay her for the delivery, and told Jewell that "If you come over here, I'll pay you."
 
 
 8
 All of these phone conversations were taped. A federal grand jury subsequently indicted Jewell, the Sarmiento brothers, Juan LNU, Juan Perez, and Herbert McDaniel for conspiring to traffic cocaine. At trial, the district court admitted into evidence the taped phone conversations during which Juan LNU had mentioned Ramon Sarmiento by name. Sarmiento was convicted on both counts for which he had been indicted: (1) for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (2) for conspiracy to commit the same crime, in violation of 21 U.S.C. § 846. He now appeals.
 
 II.
 
 9
 Ramon Sarmiento's sole contention is that the three taped phone conversations were inadmissible hearsay. Under Fed.R.Evid. 801(d)(2)(E), "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is deemed to be an admission by that party, and therefore not hearsay. A key requirement is that the party and the declarant be in the conspiracy. Sarmiento argues that, whatever evidence there may have been of a drug conspiracy between him, his brother, and Denise Jewell, there was insufficient evidence of a drug conspiracy between him and Juan LNU, the speaker who identified Ramon on the tapes. Therefore, concludes Sarmiento, it was error for the district court to admit these tapes against him.
 
 
 10
 We disagree. In Rule 801(d)(2)(E) cases, the trial court need only find the conspiracy by a preponderance of the evidence in order to admit the co-conspirator's statement as evidence against a party. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Moreover, the co-conspirator's statements themselves can be "probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." Id. at 180. While the Supreme Court declined to say in Bourjaily whether the co-conspirator's statements alone could establish the conspiracy, id. at 181, we are not faced with that question here. Denise Jewell's testimony combines easily with Juan LNU's taped statements to supply a preponderance of proof that Juan LNU was an active participant in the Sarmientos' drug ring.
 
 
 11
 Denise Jewell's testimony by itself is highly probative of a connection between Ramon Sarmiento and Juan LNU. Jewell met Ramon Sarmiento at Juan LNU's store, where she picked up the kilo of cocaine. Juan LNU was present when Ramon called Juan Perez from the back of the store with the cocaine. Juan LNU's apartment served as a safehouse for Jewell to pack the cocaine in her luggage. And Ramon Sarmiento left Juan LNU's apartment phone number for Jewell to call Ramon in New York.
 
 
 12
 Juan LNU's taped statements only reinforce the conclusion that he played a central role in the drug conspiracy. During his first conversation with Jewell, Juan LNU informed her that Ramon was absent, and told her where Ramon could be reached. During the second conversation, Juan LNU assured that Fernando had spoken to Ramon. And during the third conversation, Juan LNU promised Jewell that he would pay her himself for delivering the cocaine.
 
 III.
 
 13
 In short, this case presents an easy application of the Bourjaily rule. There was abundant evidence linking Juan LNU to the Sarmiento brothers' drug operation. Moreover, since admitting the tapes did not violate Rule 801(d)(2)(E), it could not have violated the Confrontation Clause of the Sixth Amendment either. United States v. Chindawongse, 771 F.2d 840, 846-47 (4th Cir. 1985). The judgment of the district court is therefore
 
 
 14
 AFFIRMED.