**In re CANVAS SPECIALTY, INC., Debtor.**

**No. LA 00–33180–SB.**

United States Bankruptcy Court, C.D. California.

March 28, 2001.

---

Vicki L. Schennum, Law Offices of Vicki L. Schennum, Huntington Beach, CA, for debtor.

Hydee R. Feldstein, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for defendants.

### Opinion on Qualification of Expert Witness

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. Introduction

This opinion involves the admissibility of expert testimony under Rule 104(a) and Rule 702 of the Federal Rules of Evidence, as amended effective December 1, 2000. In this dispute the court finds that the expert testimony of an architect meets none of the requirements for expert testimony under those rules and thus is inadmissible.

### II. Relevant Facts

Prior to the filing of this chapter 11 case, H.T. Santa Barbara, Inc. ("HTSB"), the owner and developer of Bacara Resort & Spa ("Bacara"), contracted to purchase twenty large metal and canvas cabañas [1] to be built by debtor Canvas Specialty, Inc.

("CSI"). HTSB ordered the cabañas for installation at the Bacara facility under development near Santa Barbara, California. The total amended contract price was approximately $136,000, of which CSI received $32,090.76 as an advance deposit. CSI delivered fourteen cabañas prepetition, and four more were ready for delivery at the time of filing.

However, a dispute has developed on the construction of the cabañas. CSI contends that the cabañas meet the contract specifications as amended. HTSB contends that the structures have numerous design and construction deficiencies, and that they do not conform to the contract specifications.

Because of the dispute, the remaining $140,000 of the purchase price were deposited in the trust account of CSI's counsel pending authorization from HTSB to release the funds to CSI. In the interim, CSI spent at least $113,489 on this project, which led to a cash flow crisis precipitating this bankruptcy filing.

Immediately after filing its petition, CSI brought a motion to obtain the release of the funds held in trust, to provide a cash flow needed for its reorganization. CSI asserts that HTSB's objection to the disbursement of the funds was made in bad faith.

In opposition to the motion, HTSB filed the declaration of Michael Leclere, its principal architect who has offices in New York City, in which he proposes to give expert testimony that the cabañas do not conform to the contract and are defective. The sole qualification that Leclere gives, to establish that he is an expert qualified to testify under Rule 702, is that he is an architect. In addition to this training, Leclere states in his declaration that he has

---

1. The cabañas were to be constructed in three sizes: eight by ten feet, eight by twelve feet, and ten feet square.

brought his expertise to bear on the problem in this case as follows:

> Based on my education, experience, knowledge, training, my involvement as architect at Bacara, my review of the Debtor's contract and design specifications, and my knowledge of industry specifications, it is my opinion that the Canvas Cabañas supplied by the Debtor for use at Bacara are defective.

CSI filed evidentiary objections to the admission of Leclere's declaration on grounds that Leclere is not a qualified expert in the field of design, manufacturing and installation of custom fabricated cabañas. The court sustains the objections and finds Leclere's declaration inadmissible under Fed.R.Evid. 104(a) and 702.

The court orders that $106,423.58 of the $140,000 in the trust account be released to CSI for payment on the fourteen cabañas that have been delivered.

## III. DISCUSSION

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise *if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.*

Rule 702 was amended effective December 1, 2000 to add the italicized language.

This new language governs the admissibility of the evidence here at issue. While the hearing where the evidence was presented took place on October 2, 2000, the court finds that the amendment to Rule 702 partially codifies prior United States Supreme Court case law that predates the hearing. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993).

The criteria specified in Rule 702 do not exhaust the conditions that expert testimony may be required to meet. The Committee Note recognizes that courts have found other factors relevant to determining whether expert testimony should be admitted. These factors include: (1) whether an expert is proposing to testify on matters growing naturally and directly out of research conducted independent of the litigation at issue; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations; (4) whether the expert is being as careful in the litigation as the expert would be in the expert's regular professional work; and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *See generally* Rule 702 Committee Note and cases cited therein. Any of these factors, or others, may also be applicable in a particular case in determining whether particular proffered expert testimony is admissible.

Rule 702 does not distinguish between scientific and other forms of expert testimony: all expert testimony must meet these criteria. *See* Rule 702 Committee Note. In particular, an opinion from an expert who is not a scientist requires the same degree of scrutiny for reliability as a opinion from an expert who purports to be

a scientist. *Id.; Watkins v. Telsmith, Inc.,* 121 F.3d 984, 991 (5th Cir.1997). The proponent of expert testimony has the burden of proving by a preponderance of the evidence that the admissibility requirements are met. See *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987).

■ The trial judge has a gatekeeping duty to determine whether expert testimony may be admitted under Rule 702. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999); *General Electric Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). If the trial judge finds that the requirements of Rule 702 and any other requirements for expert testimony are not met, the expert testimony must be excluded.

### A. *Daubert* and *Kumho Tire*

The amendments to Rule 702 were inspired by the two recent United States Supreme Court cases, *Daubert* and *Kumho Tire,* and constitute an incomplete codification of the rulings in these two cases.

*Daubert* involved the admissibility of scientific evidence on whether serious birth defects in two children were caused by their mothers' ingestion during pregnancy of Benedectin, a prescription antinausea drug manufactured by defendant. Defendant obtained summary judgment, which was affirmed on appeal, based on its expert's testimony that more than thirty published studies on Benedectin all found no link between it and human birth defects. *Id.* at 583, 113 S.Ct. 2786. The trial court excluded the testimony of eight experts offered by plaintiffs who concluded that Benedectin could cause birth defects. This testimony was based on test tube and animal studies, pharmacological studies of the chemical structure of Benedectin, and the reanalysis of previously published human epidemiological studies. *Id.* at 583–84, 113 S.Ct. 2786. The trial court found that the reanalysis of the previous studies was not admissible because it had not been published or subjected to peer review, and that the other evidence of the plaintiffs' experts was inadmissible in light of the vast body of epidemiological data. *Id.* at 583–84, 113 S.Ct. 2786.

In reversing the lower court, *Daubert* gave several considerations to guide trial courts in assessing the reliability of scientific expert testimony: (1) whether the expert's technique or theory can be or has been tested, (2) whether the technique or theory has been subjected to peer review and publication, (3) the known or potential rate of error of the particular technique or theory when applied, (4) the existence and maintenance of standards controlling the technique's operations, and (5) whether the technique or theory is generally accepted in the scientific community. *Daubert* explicitly recognized that these considerations are neither exclusive nor exhaustive. *See* 509 U.S. at 593, 113 S.Ct. 2786.

The Supreme Court in *Kumho* held that the trial court's gatekeeping duty articulated in *Daubert* is not limited to scientific knowledge. *Kumho* arose from a minivan accident caused by a tire blowout, that caused the death of one passenger and severe injuries to the other passengers. The Supreme Court sustained the decision of the trial court (which had been reversed on appeal) to apply the *Daubert* considerations to the admissibility of testimony by an expert in tire failure analysis. *See* 526 U.S. at 147–49, 119 S.Ct. 1167. The trial court had granted summary judgment to the defendants after excluding the testimony on the following *Daubert* grounds: the testability of the expert's theory, whether

it had been subject to peer review or publication, and its degree of acceptance within the relevant scientific community. *See id.* at 145, 113 S.Ct. 2786.

This reliability standard, the Court held in *Kumho*, requires the trial court to assure that all expert testimony, whether scientific or otherwise, conforms to the standards of evidentiary reliability. *See id.* at 149, 119 S.Ct. 1167. Engineering testimony, such as that in *Kumho*, rests on scientific foundations whose reliability may be at issue in some cases. *See id.* at 150, 119 S.Ct. 1167. In other cases, the relevant reliability concerns may focus on personal knowledge or experience. *See id.*, 526 U.S. at 150, 119 S.Ct. 1167.

While finding that the *Daubert* approach must be applied to all expert testimony, the Supreme Court in *Kumho* emphasized that the Rule 702 inquiry must be flexible and adapted to the particular circumstances of the particular case at issue. *See id.* at 150–51, 119 S.Ct. 1167. Thus the specific considerations articulated in *Daubert* may or may not be applicable in a particular case, even where scientific testimony is offered. *See id.* at 150, 113 S.Ct. 2786. At the same time, in certain cases the *Daubert* principles may be helpful to evaluate the reliability of experience-based expert testimony. *See id.* at 151, 113 S.Ct. 2786.

The fundamental principle, the Supreme Court said in *Kumho*, is that the trial court as gatekeeper must apply the appropriate principles to ensure the reliability and relevancy of expert testimony. *See id.* at 152, 119 S.Ct. 1167. The expert, whether basing testimony upon professional studies or personal learning, must employ in the courtroom the same level of intellectual rigor as in the practice of the expert

in the relevant field. *See id.*, 526 U.S. at 150, 113 S.Ct. 1167.

The Supreme Court in *Kumho* ultimately sustained the exclusion of the expert testimony. The issue was whether the particular expert before the trial court could reliably determine the cause of the tire's failure. *See id.* at 153–54, 119 S.Ct. 1167. The Court found no abuse of discretion in the trial court's finding of unreliability in both the methodology employed by the expert in analyzing the data obtained in the visual inspection of the tire and in the scientific basis (if any), as articulated by the expert, for the analysis. *See id.* at 153–58, 119 S.Ct. 1167.

## B. Qualification as an Expert—Rule 104(a)

■ Faced with a proffer of expert testimony, Rule 104(a)[2] requires a trial judge to determine whether the witness is proposing to testify to (1) an area of expertise, (2) that will assist the trier of fact to understand or determine a fact in issue. *See Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. The court has no doubt that appropriate expert testimony would assist in its determination of whether the cabañas here at issue conform to the contract and meet general industry standards.

### 1. LeClere's Qualifications

The evidence must show that the expert witness possesses the appropriate expertise. Here LeClere has testified that he is an architect, and that he has education, experience, knowledge, training, and involvement as an architect at Bacara. However, he does not state where he received his education, what type of experience he has, or what kind of knowledge or training he has in the field of architecture.

■ Evidence of a purported expert's qualifications is required. Without such

**2.** Rule 104(a) provides in relevant part: "Preliminary questions concerning the qualification of a person to be a witness ... shall be determined by the court ...."

evidence, the parties and the court are unable to determine whether the witness is in fact an expert. Evidence of LeClere's qualifications as an architect, and of his education, experience, knowledge and training is wholly lacking in this case. For this reason, the court cannot find that he qualifies as an expert in architecture.

## 2. Recognized Body of Knowledge

■ In addition, there must be a recognized body of knowledge, learning or expertise upon which the witness relies. *See Kumho,* 526 U.S. at 151, 119 S.Ct. 1167; American College of Trial Lawyers, *Standards and Procedures for Determining the Admissibility of Expert Testimony after Daubert,* 157 F.R.D. 571, 579 (1994). Where there is no field of expertise, nobody will qualify as an expert witness on the subject. For example, the Supreme Court itself has told us that astrology and necromancy lack a recognized body of knowledge to support expertise. *See Kumho,* 526 U.S. at 151, 119 S.Ct. 1167. In contrast, in *In re Valley–Vulcan Mold Co.,* 237 B.R. 322, 335 (6th Cir. BAP 1999), the court found that solvency opinions is an area of expertise on which a qualified expert can testify.

LeClere was presented as an expert witness in the field of architecture. Architecture is clearly an area of expertise. Architecture is a standard curriculum subject in major universities,[3] and architects are licensed as professionals by state authorities.[4] There are numerous professional societies, such as the American Institute of Architecture, that promote this expertise.

## 3. Relevance of Expertise

■ It is not enough that the proposed expert have expertise in an area of knowl-

edge. The expertise must be relevant to the determination of the facts in issue. In this case the issue is the determination of whether the large metal and canvas cabañas meet contract requirements or have design and structural deficiencies.

For example, in *In re Husting Land & Dev., Inc.,* 255 B.R. 772, 781 (Bankr. D.Utah 2000), the court found that a professional real estate developer was not competent to offer expert opinion testimony that work was incurred in the ordinary course of the debtor's business as a real estate developer. There was no evidence that the witness had any familiarity with the legal standards for determining the ordinary course of business. In consequence, his opinion testimony was not focused on facts that would tend to prove whether the standards were met.

LeClere's declaration does not show whether his expertise covers the issue in controversy in this case. It may be that the typical training of an architect includes this information. Alternatively, LeClere may have received training sufficient to make these determinations. However, there is no evidence before the court that an architect in general or this architect in particular has the requisite expertise.

Moreover, CSI has offered testimony to show that, at a September 20, 2000 meeting, LeClere stated that he was not an expert in the manufacturing and use of canvas products and did not know the normal process for completing attachments to cabañas. Thus LeClere clearly lacks the necessary expertise.

## C. Rule 702 Criteria

In addition to the Rule 104(a) requirements to qualify as an expert witness, Rule

---

**3.** I was once an adjunct professor in the School of Architecture at Ohio State University.

**4.** *See, e.g.,* Cal. Bus. & Prof. Code § 5536 (West 2001).

702 imposes certain requirements for the admission of expert testimony. These requirements are adopted to implement to mandate of *Daubert* and *Kumho* that a trial court exercise a gatekeeping function to assure that expert testimony is not admitted unless it measures up to the standards of evidentiary reliability.

Rule 702 requires that the proponent of an expert's testimony show that the testimony meets three criteria: (1) the testimony must be based on sufficient facts or data, (2) the testimony must be the product of reliable principles and methods, and (3) the expert witness must have applied the principles and methods reliably to the facts of the case. LeClere's testimony meets none of these criteria.

### 1. Sufficient Facts or Data

The first criterion of the Section 702 is that the testimony must be based upon sufficient facts or data. This criterion is generally quantitative, rather than qualitative: the quantum of facts or data relied upon by the expert must be sufficient to support the opinions expressed. *See* Rule 702 Committee Note. In *Connolly v. Harris Trust Co. (In re Miniscribe Corp.)*, 241 B.R. 729 (Bankr.D.Colo.1999), for example, the court found that an experienced bankruptcy attorney lacked sufficient facts to testify on the compensation generally paid to chapter 7 trustees, because he had never served as a chapter 7 trustee or represented one.

Even where an expert has sufficient data, the testimony may be inadmissible if the expert has a gross misunderstanding of the relevant facts. *See In re Bonham*, 251 B.R. 113, 135 (Bankr.D.Alaska 2000) (denying admission of an expert's report that was based on substantial factual mistakes, speculation, innuendo and inferences unsupported by full explanations and analysis).

In addition to a sufficient quantity of data, the expert must obtain the right kind of data to support the conclusions drawn. The most detailed examination of this issue in a particular case is found in *In re Dow Corning Corp.*, 237 B.R. 364 (Bankr.E.D.Mich.1999), where a certified public accountant's testimony was offered on the sufficiency of a fund proposed to satisfy claims for faulty breast implants manufactured by the debtor. In support of his conclusion that a $400 million fund would clearly be insufficient, the accountant found that he needed to make four subsidiary conclusions. While finding it proper for an accountant to rely on data to support these conclusions, the court's careful analysis of the accountant's data showed that each of the subsidiary conclusions lacked sufficient factual support. *See id.* at 368–74. In consequence, the court sustained the objection to the admission of the evidence.

The evidence in LeClere's declaration is insufficient to establish that his testimony is based on sufficient facts or data. LeClere opines that the cabañas were not constructed in accordance with the contractual specifications. However, the evidence shows that HTSB, acting through Denton as its authorized agent, and CSI made oral modifications during the production of the cabañas that deviated from the design under the original contract. There is no evidence that LeClere took account of these modifications.

Thus LeClere failed to base his opinion on the operative contract between the parties. The court finds that the quantum of facts or data relied upon by LeClere in giving his opinion were insufficient to satisfy the first criterion of Rule 702.

### 2. Reliable Principles and Methods

The second criterion of Rule 702 imposes two requirements on an expert.

First, it requires that the expert use reliable principles and methods. Second, it requires that the expert explain the principles and methods used, so that the parties and the court can examine their reliability.

In *Kumho* the Supreme Court upheld the trial court's determination (as not an abuse of discretion) that the methods used by the expert on tire failure were not reliable. The expert had used a visual and tactile inspection to determine whether the tire failure resulted from a manufacturing defect or from abuse in its use. The trial court's doubts about the reasonableness of this approach, along with problems with its application as disclosed in the expert's deposition testimony, led it to reject the expert's testimony.

Similarly, in *Lust v. Merrell Dow Pharmaceuticals, Inc.,* 89 F.3d 594 (9th Cir. 1996), the Ninth Circuit upheld the exclusion of expert testimony that the use of the fertility drug Clomid by plaintiff's mother caused his birth defects. The court rejected the expert's chief premise, that if there is evidence of a positive association between an agent and a wide variety of birth defects in human epidemiological and animal studies, then the agent substantially increases the probability of all types of birth defects. *See id.* at 597. The court found that not even a relevant minority of experts on birth defects accepted this premise. *See id.*

In contrast, in *In re Zenith Electronics Corp.,* 241 B.R. 92, 103 (Bankr.D.Del.1999), the court admitted the testimony of investment banking experts because the capital asset pricing model, discounted cash flow analysis and the market reports that they used were well-accepted methodologies.

In addition, Rule 702 requires an expert to articulate the principles and methods that the expert has used. If the expert does not disclose the principles and methods used, the court is unable to determine whether the expert has utilized the correct principles and methods, or whether they have been reliably applied in the particular case (as required by the third criterion).

Here, LeClere gives no clue as to the principles or methods that he used. While LeClere opined that the cabañas were defective because they were below industry standards, he does not state what the industry standards are, or why the delivered cabañas are below industry standards. Thus it is impossible to ascertain what principles or methods LeClere used, or to evaluate whether they are generally accepted among the relevant experts.

## 3. Reliable Application of Principles and Methods to the Facts

█ The third criterion of Rule 702 requires that the expert apply the principles and methods reliably to the facts of the case. Before expert testimony can be admitted, the trial judge must find that the testimony is properly grounded, well-reasoned and not speculative. *See* Rule 702 Committee Note. Stated differently, an expert's opinion must be sufficiently supported by the applicable principles and methods. *See General Electric Co. v. Joiner,* 522 U.S. 136, 144, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

█ If the court finds that there is too great an analytical gap between the data and the opinion proffered, it may deny the admission of the testimony. *See id.* at 146, 118 S.Ct. 512; *In re Dow Corning Corp.,* 237 B.R. 364, 369–72 (Bankr.E.D.Mich. 1999). In *Kumho* the Supreme Court sustained the trial court's rejection of the expert testimony of the tire failure specialist in part because it found the expert's analysis of the data pursuant to his methodology to be unreliable. *See* 526 U.S. at 153–54, 119 S.Ct. 1167.

Because the court in this case cannot determine what principles and methods

LeClere applied, it is also not able to determine whether he applied the appropriate principles and methods reliably.

### C. Other Criteria

The criteria stated in Rule 702 do not exhaust the conditions that an expert may be required to meet to qualify to give expert testimony. The considerations listed in *Daubert* itself go substantially beyond the requirements of Rule 702.

In addition, as noted *supra*, other courts have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. HTSB provides no evidence to permit the court to assess the applicability of these factors. For this additional reason LeClere's testimony is inadmissible.

### IV. CONCLUSION

The court concludes that LeClere's declaration does not meet the requirements for the admission of expert testimony under Rule 104(a) and Rule 702 of the Federal Rules of Evidence. The proponents of LeClere's declaration have failed to establish that the declaration was based on sufficient facts or data, that LeClere used reliable principles and methods in making his declaration, or that LeClere applied principles and methods reliably to the facts of the case. Furthermore, the proponents have not shown that LeClere is a qualified expert in the field of architecture, or that his expertise extends to constructing and manufacturing cabañas or determining whether they comply with the contract specifications in this case. Thus his declaration cannot be admitted over the objection of CSI.