OPINION
{¶ 1} This appeal is brought by Appellant, Easter M. Brownlow, from the judgment of the Court of Common Pleas of Allen County imposing a cumulative sentence of thirty years in prison for her conviction of eight charges relating to drug offenses.
 {¶ 2} The Lima Police Department P.A.C.E. team worked with a confidential informant on several occasions to conduct controlled cocaine buys. It was unknown to those selling drugs to Ed Stroub that he was a confidential informant at the time of the controlled buys. Before each of the controlled buys that Ed Stroub participated in as a confidential informant a standard procedure was followed, in which the confidential informant was searched to ensure he had no money or contraband on his person or in his vehicle, a wireless transmitter was placed on the confidential informant's person, and previously recorded money was issued to the confidential informant to use in the controlled buys. On each occasion, investigators met with the confidential informant at a private location where the preliminary procedures were performed. The investigators then followed the confidential informant as he drove to 307 N. Collett Street in Lima, Ohio. The investigators conducted audio and visual surveillance from various locations in the vicinity of the residence. A brief debriefing was also held with the confidential informant when the investigators met with him to collect the contraband obtained from the transaction.
 {¶ 3} The first controlled buy occurred on March 28, 2002. The confidential informant went to 307 N. Collett Street in Lima, Ohio with $170 to purchase crack cocaine from Shelli Breaston and Cornelius Brownlow. The confidential informant handed the money to Shelli Breaston. Shelli then handed the money to Cornelius Brownlow who then left the residence and walked north on Collett Street. After Cornelius Brownlow left, Shelli Breaston made a phone call, which was recorded by the transmitter worn by the confidential informant. Easter Brownlow was purportedly on the other side of the conversation. This was established from the way Shelli referred to the person with which she was speaking. Investigators did not follow Cornelius Brownlow on this occasion but Cornelius was observed returning to his residence from a northern direction on Collett Street approximately fifteen minutes later. The confidential informant received approximately 3.2 grams of crack cocaine and then he left the residence.
 {¶ 4} The second controlled buy occurred on April 4, 2002, in which the confidential informant again went to 307 N. Collett Street in Lima, Ohio. The confidential informant handed Shelli Breaston the money and she gave the money to Cornelius Brownlow. Cornelius Brownlow and Luther Woodfork, who was at the residence at 307 N. Collett Street when the confidential informant arrived, left the residence and walked north on Collett Street. Cornelius Brownlow was observed by investigators entering Easter Brownlow's residence but investigators did not observe him exit the residence through the front door. Luther Woodfork continued walking north on Collett Street and was not observed entering Easter Brownlow's residence. Approximately fifteen minutes after Cornelius Brownlow left the residence at 307 N. Collett Street, Shelli Breaston and the confidential informant left in separate vehicles, with the confidential informant following Shelli to a residence where the crack cocaine was to be handed over to the confidential informant. Cornelius Brownlow was observed only minutes later delivering a package of crack cocaine to a friend's house located a block to the rear of Easter Brownlow's residence. The package was delivered to Shelli Breaston, who then delivered it to the confidential informant. The confidential informant was supposed to receive approximately 24 grams of crack cocaine, but only approximately 12.7 grams of crack-cocaine was given to the informant for $1,100.
 {¶ 5} The confidential informant was contacted by officers later in the day on April 4, 2002 and was informed that he only received half of the amount of crack cocaine for which he had paid. The confidential informant met with the officers and made a call to Shelli Breaston in which he arranged to pick up the remainder of the crack cocaine the following day. On April 5, 2002, the confidential informant went to 307 N. Collett Street to collect the crack cocaine that was owed to him from the transaction on April 4, 2002. Cornelius Brownlow was not at the residence when the confidential informant arrived, but he returned approximately fifteen minutes later with his daughter. Cornelius Brownlow motioned for his daughter to hand the confidential informant the crack cocaine, which she did. The informant was provided approximately 5.7 grams of crack cocaine and Cornelius indicated that the confidential informant was still owed more.
 {¶ 6} On April 11, 2002, the confidential informant once again attempted to collect the remaining portion of the crack-cocaine that was owed from the transaction on April 4, 2002. However, this attempt was unsuccessful as Cornelius Brownlow did not have crack cocaine to give to the confidential informant. The parties agreed that the crack cocaine still owed to the confidential informant would be added to the next buy.
 {¶ 7} The third controlled buy occurred on April 30, 2002, in which the confidential informant purchased approximately 12.8 grams of crack-cocaine for $550.00. The confidential informant again went to the residence at 307 N. Collett Street. Cornelius Brownlow was again observed leaving the residence after the informant's arrival. Cornelius Brownlow was followed to Easter Brownlow's residence at 521 N. Collett Street where he was observed entering the residence. Cornelius and Easter Brownlow were observed walking outside onto the front porch together. Only a few minutes later Cornelius Brownlow was observed exiting Easter Brownlow's residence and he was followed back to his own residence. Cornelius Brownlow gave the crack cocaine to a friend, who then turned it over to the confidential informant.
 {¶ 8} Easter Brownlow was suspected of supplying the cocaine in each of the described cocaine buys. During each of the controlled buys Shelli Breaston and/or Cornelius Brownlow were observed either walking towards or into Easter Brownlow's residence at 521 N. Collett Street in Lima, Ohio or spoke to, or of, Easter Brownlow during the cocaine buy. When Shelli Breaston and/or Cornelius Brownlow would leave the residence at 307 N. Collett Street during the cocaine buys and walk towards Easter Brownlow's residence, they would then deliver an off-white substance that tested positive for the presumptive presence of cocaine on each occasion.
 {¶ 9} On April 30, 2002, Investigator Jeff Kinkle of the Lima Police Department P.A.C.E. team presented an affidavit and made a request to the trial judge for a search warrant for the residence at 521 N. Collett Street in Lima, Ohio. The search warrant was issued and officers executed the warrant on the same day. Easter Brownlow was present when Investigator Kinkle entered the residence. Investigator Kinkle asked Easter Brownlow some background questions, including who lived in the home, which Easter answered. There was testimony that there was an attempt to interview Easter Brownlow later at the police station but she declined to talk. Easter Brownlow was in possession of 126 grams of cocaine and crack cocaine at her residence located at 521 N. Collett Street in Lima, Ohio. Easter Brownlow was in possession of 312 grams of marijuana at her residence as well. Also recovered from Easter Brownlow's residence was a loaded, .38 caliber revolver, drug ledgers, scales and $8,081 in various bills, $730 of which was buy money ($20 from the first controlled buy and $710 from the second controlled buy).
 {¶ 10} From the period of time beginning approximately three years prior to April 30, 2002 through the date of April 30, 2002, the State established that Easter Brownlow had been associated with an enterprise consisting of, at a minimum, Cornelius Brownlow, Shelli Breaston, Easter Brownlow and Greg Saucer. The affairs of this enterprise consisted of making multiple crack cocaine sales, with at least one of the illicit sales of crack cocaine being a felony of the first, second or third degree.
 {¶ 11} Easter Brownlow was indicted on a total of eight counts, including: one count of trafficking in crack cocaine, in violation of R.C. 2925.03(A) and (C)(4)(c), a felony of the fourth degree; two counts of trafficking in crack cocaine, in violation of R.C. 2925.03(A) and (C)(4)(e), a felony of the second degree; one count of possession of powder cocaine with a firearm specification, in violation of R.C. 2925.11(A) and (C)(4)(d), a felony of the second degree; one count of possession of crack cocaine with a firearm specification, a violation of 2925.11(A) and (C)(4)(a), a felony of the fifth degree; one count of possession of marijuana with a firearm specification, in violation of R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree; one count of having a weapon while under a disability, in violation of R.C. 2923.13(A)(3), a felony of the fifth degree; and one count of engaging in a pattern of corrupt activity with forfeiture specification, in violation of R.C. 2923.32(A)(1) and(B)(1), a felony of the first degree.
 {¶ 12} On July 8, 2002, Easter Brownlow filed a motion to suppress the evidence obtained from the execution of the search warrant at 521 N. Collett Street on April 30, 2002. On July 9, 2002, Easter Brownlow filed a motion to suppress the Statements obtained by officers during the execution of the search warrant. In its judgment entry dated September 17, 2002, the trial court overruled the motions. A jury trial commenced on October 21, 2002 and the jury returned a verdict of guilty on all counts on October 28, 2002. The trial court sentenced Easter Brownlow to a cumulative sentence of thirty years in prison. It is from this judgment that Easter Brownlow now appeals, raising the following three assignments of error.
The trial court committed an error of law by admitting the testimony of Shelli Breaston pursuant to Evid.R. 801(D)(2)(e).
The trial court committed an error of law by admitting hearsay Statements through the testimony and the tape recordings of the transactions.
The trial court committed an error of law by denying the Crim.R. 29 motion for acquittal.
 {¶ 13} In her first assignment of error, Easter Brownlow asserts that the testimony of Shelli Breaston was inadmissible under Evid.R. 801(D)(2)(e) because the State failed to establish the existence of a conspiracy prior to the testimony of Shelli Breaston.
 {¶ 14} Evid.R. 801(D)(2)(e) provides that the Statement of a co-conspirator is not hearsay if offered against a party and is "a Statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." The Ohio Supreme Court held in State v. Carter (1995), 72 Ohio St.3d 545,550, 651 N.E.2d 965 that "pursuant to the express terms of the rule, the Statement of a co-conspirator is not admissible pursuant to Evid.R. 801(D)(2)(e) until the proponent of the Statement has made a prima facie showing of the existence of the conspiracy by independent proof." In addition, this court held in State v. Adkins (2000), 136 Ohio App.3d 765,774, 737 N.E.2d 1021 that "Evid.R. 801(D)(2)(e) merely requires the presentation of evidence as to one factor — the existence of the conspiracy — prior to the admission of a co-conspirator's Statement." When the existence of a conspiracy and the nonoffering party's involvement in it are disputed, the offering party must prove the preliminary facts relevant to Rule 801(D)(2)(e) by a preponderance of the evidence. Bourjaily v. United States (1987), 483 U.S. 171.
 {¶ 15} The record in this case shows that the State presented sufficient evidence, through the testimony of the confidential informant and police officers involved in the controlled buys, as well as the audiotapes of the controlled buys, to establish that a conspiracy involving Easter Brownlow, Shelli Breaston and Cornelius Brownlow existed before Statements of a co-conspirator were permitted under Evid.R. 801(D)(2)(e). Each of the controlled buys showed actions by the parties in furtherance of the conspiracy.
 {¶ 16} The testimony presented at trial established that Cornelius Brownlow and Shelli Breaston had sold crack cocaine to the confidential informant during several controlled buys. The testimony presented also circumstantially established that Cornelius Brownlow was obtaining the crack cocaine from Easter Brownlow. The evidence presented at trial showed that Cornelius Brownlow headed in the direction of Easter Brownlow's residence on March 28, 2002 and returned to his residence with crack cocaine. In addition, the evidence showed that Cornelius Brownlow entered Easter Brownlow's residence on April 4, 2002, and then produced crack cocaine to Shelli Breaston who gave it to the confidential informant. The evidence further showed that Cornelius Brownlow and Shelli Breaston made drug transactions with the confidential informant in the vicinity of Easter Brownlow's residence after Cornelius Brownlow had been seen entering Easter Brownlow's residence. In addition, a recorded phone conversation showed that on March 28, 2002, Easter Brownlow was contacted by Shelli Breaston, at the request of Cornelius Brownlow, to obtain crack cocaine for drug transactions involving the confidential informant.
 {¶ 17} At the time the co-conspirator Statements were admitted in court, a sufficient prima facie showing of the existence of a conspiracy between Easter Brownlow, Shelli Breaston and Cornelius Brownlow had been made by the State by independent proof, as required by Evid.R. 801(D)(2)(e). Therefore, we find no error in the admission of the challenged Statements and we overrule Easter Brownlow's first assignment of error.
 {¶ 18} In her second assignment of error, Easter Brownlow contends that hearsay was erroneously admitted by the trial court as to the audiotapes of the drug buys and the confidential informant testifying as to the identity of the voices on the tapes, as well as the testimony of the confidential informant and Shelli Breaston regarding Statements of Cornelius Brownlow. Although Easter Brownlow concedes that trial counsel only objected to the State playing portions of the audiotapes of the drug buys, rather than the whole tape, and to the confidential informant interpreting the content of the tapes, Easter argues that the trial court committed plain error in admitting the hearsay Statements of Cornelius Brownlow through testimony of the confidential informant and Shelli Breaston and through the playing of the audiotapes.
 {¶ 19} Defense counsel made a motion in limine before the start of trial asserting that the audiotapes should be excluded under the best evidence rule. Defense counsel argued that unless the testimony of the confidential informant was being impeached, the use of the audiotapes to corroborate his testimony was improper. We disagree.
 {¶ 20} We note that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court," and we will not disturb that decision absent an abuse of discretion. Wightman v.Consol. Rail Corp. (1999), 86 Ohio St.3d 431, 437, 715 N.E.2d 546, citingPeters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299,587 N.E.2d 290. In addition, the abuse of discretion by the trial court must have materially prejudiced Easter Brownlow. State v. Maurer (1984),15 Ohio St.3d 239, 473 N.E.2d 768.
 {¶ 21} In our review of the record, we cannot say that the trial court abused its discretion by admitting the audiotapes of the controlled drug buys. The tapes of the controlled buys in this case are admissible as part of the res gestae of the controlled buys. The evidence is testimony of what actually transpired during the drug transaction. The audiotapes were played in court after the testimony of several police officers and the confidential informant describing what transpired during the controlled drug buys. The tapes, as part of the investigation of the officers, simply corroborated the in-court testimony of the confidential informant and the police officers who were involved in the controlled buys.
 {¶ 22} While defense counsel objected at trial to the State playing only portions of the audiotapes of the drug buys, defense counsel did not object to portions of the tapes being played that contained hearsay Statements of Cornelius Brownlow. Therefore, we review the admission of these Statements under a plain error standard. Plain error is an error or defect at trial, not brought to the attention of the court, that affects a substantial right of the defendant. Crim.R. 52(B). In order to show that the trial court erred by admitting the alleged hearsay Statements of Cornelius Brownlow, Easter Brownlow must show that the error prejudiced the outcome of the proceedings. State v. Pack, 3d Dist. App. No. 2-2000-20, 2000-Ohio-1792, 2000 WL 1695123.
 {¶ 23} The trial court did not err in allowing the audiotapes of the controlled buys to be played in court, even though they contained Statements of Cornelius Brownlow. As we held with regard to the first assignment of error, the State established an ongoing, drug-dealing conspiracy between Cornelius Brownlow, Shelli Breaston and Easter Brownlow. Under Evid.R. 801(D)(2)(e), Statements made by Cornelius Brownlow in furtherance of the conspiracy are properly admissible at trial as Statements by a co-conspirator. Therefore, the portions of the tapes containing Statements by Cornelius Brownlow were admissible nonhearsay.
 {¶ 24} In addition, the testimony of Shelli Breaston regarding Statements made by Cornelius Brownlow that were objected to at trial were also admissible as Statements by a co-conspirator. Shelli Breaston testified at trial as to her knowledge, both personal and as she was told by Cornelius Brownlow, of the drug dealing that went on between herself, Cornelius Brownlow and Easter Brownlow. These Statements were made after the State had established an enterprise between Shelli Breaston, Cornelius Brownlow and Easter Brownlow and the Statements were made in furtherance of the conspiracy. Therefore, the Statements made by Cornelius Brownlow that were admitted through the testimony of Shelli Breaston were admissible nonhearsay and were properly allowed by the trial court.
 {¶ 25} Following the same reasoning, the Statements made by Cornelius Brownlow that were allowed in court through the testimony of the confidential informant are also admissible under Evid.R. 801(D)(2)(e). The Statements by the confidential informant were made after the State had established an enterprise between Cornelius Brownlow, Easter Brownlow and Shelli Breaston and the Statements by Cornelius Brownlow that the confidential informant testified to were made in furtherance of the conspiracy. Therefore, such Statements were properly admitted by the trial court.
 {¶ 26} Furthermore, any error that may have occurred by the admission of these alleged hearsay Statements was harmless error in light of the amount of evidence presented at trial in support of Easter Brownlow's guilt. For the foregoing reasons, the second assignment of error is overruled.
 {¶ 27} In her third assignment of error, Easter Brownlow argues that her Crim.R. 29 motion for acquittal should have been granted. First, Easter reiterates the argument previously presented in her brief that Shelli Breaston's testimony was improper hearsay and should not have been admitted. Easter asserts that without this improper testimony the State failed to prove the essential elements of the drug trafficking offenses in Counts 1, 2 and 3 of the indictment. Since we determined that Shelli Breaston's testimony was properly permitted as the testimony of a co-conspirator under Evid.R. 801(D)(2)(e), we hold that the first part of this assignment of error is without merit.
 {¶ 28} We now turn to the second part of this assignment of error in which Easter asserts that the State failed to prove the essential elements of engaging in a pattern of corrupt activity from April, 1999 through April, 2002, which is contained in Count 8 of the indictment. This argument also centers on the admission of Shelli Breaston's testimony, asserting that the State's case is built solely on hearsay from an unreliable source. A review of the record shows there is sufficient evidence to support a conviction of the charge of engaging in a pattern of corrupt activity, even without the testimony of Shelli Breaston which Easter Brownlow asserts was inadmissible hearsay.
 {¶ 29} Defense counsel for Easter Brownlow made a motion for acquittal under Crim.R. 29 at the close of the State's presentation of evidence and at the close of the defendant's presentation of evidence. The court overruled both motions for acquittal finding that there was sufficient evidence to sustain a conviction, if so believed by the jury. This court has held that "a court `may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.'" State v. Adkins
(2000), 136 Ohio App.3d 765, 775, 737 N.E.2d 1021, citing State v.Pickett (1996), 108 Ohio App.3d 312, 314, 670 N.E.2d 576. In reviewing the evidence to determine whether it is sufficient to support the defendant's guilt beyond a reasonable doubt, the appellate court must inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of syllabus,574 N.E.2d 492.
 {¶ 30} Easter Brownlow was convicted of engaging in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1). Therefore, the inquiry required by this court is to determine whether any rational trier of fact could have found the essential elements of R.C. 2923.32(A)(1) proven beyond a reasonable doubt. R.C. 2923.32(A)(1) defines "engaging in a pattern of corrupt activity" as:
No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *.
The elements of the offense are further defined in R.C. 2923.31. The relevant definitions are defined as follows.
(C) "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
* * *
(E) "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. * * * For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, at least one of the incidents forming the pattern shall constitute a felony under the laws of this State in existence at the time it was committed[.]
* * *
(I) "Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:
* * *
(2) Conduct constituting any of the following:
(c) any violation of section * * * 2925.03 * * * of the Revised Code, any violation of section 2925.11 of the Revised Code that is a felony of the first, second, third, or fourth degree * * * when * * * value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars * * *.
 {¶ 31} Of concern in this case is the requirement that a defendant engage in a "pattern of corrupt activity," meaning two or more predicate offenses constituting corrupt activity. R.C. 2923.31(E). The indictment does not State which predicate offense or offenses listed in R.C.2923.31(I)(2) comprise the instances of Easter Brownlow's "pattern of corrupt activity." The indictment instead reads "from on or about the 30th day of April, 1999 to on or about the 30th day of April, 2002" as the period when the "pattern of corrupt activity" occurred. The State then presented evidence at trial to prove the existence of an enterprise between Cornelius Brownlow, Shelli Breaston and Easter Brownlow. From the evidence of the drug transactions that took place on March 28, 2002, April 3 and 4, 2002 and April 30, 2002, the State sought to prove, and the jury could have believed, that Easter Brownlow's involvement in such transactions was sufficient proof of her involvement in an enterprise and a "pattern of corrupt activity."
 {¶ 32} A rational trier of fact could have found in this case that the essential elements of R.C. 2923.32(A)(1) were proven beyond a reasonable doubt. The evidence presented at trial demonstrated that Cornelius Brownlow was observed heading in the direction of Easter Brownlow's residence, at 521 N. Collett Street, or was observed entering Easter Brownlow's residence and then returned to his own residence or another location with crack cocaine, which was given to the confidential informant. A recording of the drug transaction on March 28, 2002 contained a one-sided telephone conversation in which Shelli Breaston apparently contacted Easter Brownlow in order to obtain crack cocaine for the confidential informant. In addition, Shelli Breaston testified that Easter Brownlow was the source of the crack cocaine for the drug transactions in which Cornelius Brownlow participated. Furthermore, the execution of the search warrant at Easter Brownlow's home and the evidence discovered there at that time supports the conviction of Easter on the drug trafficking, possession of drugs and engaging in a pattern of corrupt activity charges. Large quantities of powder cocaine, crack cocaine and marijuana, along with a gun and ammunition were found in Easter Brownlow's home. In further support of Easter Brownlow's involvement in the alleged enterprise, buy money used in drug transactions between Cornelius Brownlow and the confidential informant was found in Easter's residence.
 {¶ 33} For the foregoing reasons, the trial court did not err in overruling Easter Brownlow's Crim.R. 29 motion for acquittal and thus, the third assignment of error is overruled.
 {¶ 34} Having found no merit in the assignments of error, the judgment of the Court of Common Pleas of Allen County is affirmed.
Judgment affirmed.
WALTERS and CUPP, JJ., concur.