Filed 1/16/14  P. v. Salvador CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058300 |
| v. | (Super.Ct.No. RIF1104335) |
| ISMAEL SALVADOR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge. Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant Ismael Salvador of burglary (count 1 – Pen. Code, § 459),[1] grand theft of a firearm (count 2 – § 487, subd. (d)(2)), and possession of brass knuckles (count 6 – former § 12020, subd. (a)(1)).  After the notice of appeal was filed,

_____

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

this court appointed counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a statement of the case, a brief statement of the facts, and identifying one potentially arguable issue: whether the trial court erred in admitting the content of the text messages found on defendant's phone. (Citing Evid. Code, §§ 1223, 1400; *People v. Gibson* (2001) 90 Cal.App.4th 371, 383; *Bruton v. United States* (1968) 391 U.S. 123; *People v. Aranda* (1965) 63 Cal.2d 518; *Bourjaily v. United States* (1987) 483 U.S. 171, 181-184.)

## FACTS AND PROCEDURAL HISTORY

The victim kept six firearms along with ammunition locked in a gun cabinet in his room. The guns were a Springfield .45-caliber handgun, a Rossey .38-special revolver; two SKS rifles, a Mossberg 500 12-gauge shotgun, and an antique Browning shotgun. The victim kept one key to the cabinet while his son kept the other. On August 4, 2011, the victim was in Utah driving a truck on his way home; he had last seen the guns two days before they were taken from the gun cabinet.

On the same date, the victim's son, who was 15 years old at the time, was home playing video games. His friend and neighbor, Victor Bahena, came over; they played video games for around 15 minutes. Bahena suggested they go over to a friend's house; the victim's son agreed; they left around sunset. The victim's son failed to lock the door to the home when he left. Bahena's friend was not home, so Bahena suggested they go to another home of an individual whom Bahena knew. That individual was not home either,

2

so the two went to Bahena's house.  Bahena cut the victim's son's hair and made them food.

Thereafter, they went back to the victim's home where they sat on the patio for 30 minutes.  The victim's son later went inside the home and noticed the door to the gun cabinet was slightly ajar.  He opened the cabinet completely and found all the guns missing.  The key to the cabinet was missing from the drawer in which the victim's son kept it.  He found the key still inside the gun cabinet.  Nothing else from the home was missing.

Deputy Sheriff Victor Ramirez was dispatched to the residence where he conducted a burglary investigation.  He noticed no sign of forced entry.  The victim's son testified Bahena knew about the guns in the cabinet.  He told Ramirez he believed Bahena had been involved in the theft and burglary.  Ramirez questioned Bahena.  Bahena said he had taken pictures of the guns inside the cabinet two weeks before they were taken from the gun cabinet.

After speaking with Bahena, Ramirez went to defendant's residence where he conducted a search of defendant's home.  Defendant informed Ramirez defendant had a pair of brass knuckles underneath his pillow; Ramirez found them.  Ramirez arrested defendant for felony possession of an illegal weapon.

Ramirez searched defendant's cell phone and found two text messages.  One read, "'That's right, my boy.  It couldn't have got any better than that.  Take care, fool.  Serio. Don't floss your shit.  Keep it gangster.  Hahaha.  Te la lavas.'"  The message had been

sent on August 5, 2011, at 4:03 a.m., from codefendant Ernesto Medina's phone.[2] The other message read, "'Uh-huh, huh, that's right, G. And yeah, G, don't even trip. I will and that shoty dayumm that shit was fully loaded with six rounds too tambien, fool. Te la lavas and foo hahahaha.'"

Riverside Sheriff's deputy Carlos Mendoza became involved in the burglary investigation when he was given suspect descriptions of the Medina brothers as well as a vehicle description and asked to conduct surveillance of the brothers' home. Mendoza and his partner commenced surveillance of the Medina brothers' home in separate vehicles. He later observed the brothers' vehicle depart the residence; he followed in an unmarked vehicle and was able to identify both brothers inside.

Mendoza called for the Ontario Police Department to conduct the traffic stop. Mendoza then made contact with the brothers; Ernesto was driving; Juan was in the passenger seat. After the brothers waived their *Miranda*[3] rights, Mendoza asked Ernesto if anything illegal was in the truck. Ernesto responded, "'I got some guns in the back.'" Mendoza found the two rifles and one of the shotguns taken from the victim's home in the brothers' vehicle. Mendoza asked the brothers who they "rolled with"; both

---

**2** The People charged and tried defendant jointly with three other defendants. None of the other defendants are parties to the instant appeal. Ernesto Medina's brother, Juan Medina, was one of the other defendants. For ease of reference and with no disrespect intended, we shall refer to the Medina brothers by their first names or collectively as the brothers or Medina brothers.

**3** *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

4

responded El Monte Flores (EMF), a predominantly Hispanic gang which originated in El Monte.

Riverside Sheriff's Deputy Bryce Holmes took over as lead investigator of the burglary on August 5, 2011. Deputy Holmes Mirandized defendant. He interviewed him on that date. Defendant admitted membership in EMF. Defendant informed Holmes defendant's moniker was "Smiley". Defendant told Holmes defendant committed the burglary and had taken two firearms from the cabinet at the residence, a black 12 gauge Mossberg shotgun and a .38-caliber Torres Rossi revolver. Defendant stated he was the only one to enter the victim's residence.

Holmes' investigation led him to the home of Jorge Garcia on the morning of August 5, 2011. Garcia consented to a search of his residence. Holmes found a .38-caliber Torres Rossi revolver in Garcia's top dresser drawer, a black 12-gauge Mossberg shotgun in his closet, and ammunition.

Holmes arrested Garcia, brought him to the police station, and read him his *Miranda* rights which Garcia waived. Garcia informed Holmes Garcia received the firearms on August 4, 2011, around 10:00 p.m.; Garcia said he knew from where they had been stolen. Garcia said he was able to identify EMF members.

Holmes also interviewed Juan who informed Holmes his moniker was "Wino." Holmes told Juan they had found the stolen guns and ammunition and asked him, "So what can you tell me from that?" Juan responded, "'You know, honestly, stupid.'" Holmes asked Juan whether there was any reason for taking the guns from the house;

5

Juan responded, "'I guess being stupid, I guess.'" Holmes interpreted Juan's comments as an admission of guilt.

Holmes asked Juan for the location of the lone missing weapon. Juan told Holmes he knew where it was and could take Holmes there. Juan guided Holmes to a vehicle in the backyard of Juan's home where he indicated the gun was concealed behind a plastic covering on the vehicle's door handle. Holmes found the Springfield .45-caliber handgun with a loaded magazine.

Juan told Holmes another magazine was located inside a slit cut in a Dodger jacket hanging inside his closet; officers found it. They also found a box of .45-caliber ammunition inside the bowl of a lamp in his bedroom. Another officer informed Holmes Juan had admitted membership in EMF.

Detective Ralph Bates of the El Monte Police Department testified as the People's gang expert. He opined Juan, Ernesto, and defendant were active members of the EMF who, in a hypothetical matching the events of the instant case, committed the crime for the benefit of or in association with EMF.

The People charged defendant by amended information with burglary (count 1 – § 459), grand theft of a firearm (count 2 – 487, subd. (d)(2)), receipt of stolen property (count 3 – 496, subd. (a)), active participation in a criminal street gang (count 5 – § 186.22, subd. (a)), and possession of brass knuckles (count 6 – § 12020, subd. (a)(1)).[4]

---

[4] The Medina brothers were charged in counts 1, 2, 3, and 5. Garcia was charged in count 3 and as an accessory to grand theft of a firearm (count 4 – §§ 32, 487, subd. (d)(2)).

The People also alleged defendant had committed counts 1 through 3 for the benefit of, at the direction of, or in association with a criminal street gang (§ 186, subd. (b)).[5]

Prior to trial, defendant argued the text messages on his phone should be excluded from evidence. The court ruled the text messages were admissible pursuant to Evidence Code section 1223. During his closing argument, defense counsel conceded defendant was guilty of burglary, theft of firearms, and possession of brass knuckles. The jury convicted defendant of counts 1, 2, and 6. It acquitted defendant of count 5. The jury found not true the gang enhancement allegations attached to counts 1 and 2.[6]

Since defendant had been convicted of residential burglary, he was ineligible for probation unless an unusual case could be found. (Cal. Rules of Court, rule 4.413(b).) The court found defendant's case to be an unusual case and granted him three years' probation with various terms and conditions including service of 365 days in jail with credit for time served of 154 days consisting of 77 days actual custody and 77 days conduct credit.

---

[5] The People also alleged the gang enhancement against the Medina brothers in counts 1 through 3. The People alleged the gang enhancement against Garcia in counts 3 and 4.

[6] Pursuant to the court's instruction with CALCRIM No. 3516, prohibiting convictions for both the theft and receipt of the same stolen property, the jury returned unsigned both the guilty and not guilty verdict forms on count 3 as to defendant. On the People's motion, the court dismissed count 3 as to defendant. The jury convicted the Medina brothers on count 3, theft of firearms, but acquitted them on all other counts and found not true the gang enhancements. The jury found Garcia guilty of count 3, but acquitted him of the offense alleged in count 4 and found not true the gang enhancement attached to count 3.

DISCUSSION

Defendant was offered an opportunity to file a personal supplemental brief, which he has not done. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues. (Evid. Code, § 1223 (admission of statement of party to conspiracy made during conspiracy not inadmissible under hearsay rule); *Davis v. Washington* (2006) 547 U.S. 813, 822, 827, 829-830, 832 [Only *testimonial* statements of codefendants, those made under circumstances which objectively indicate they are taken for the primary purpose of later criminal prosecution, are made inadmissible by the confrontation clause.]; (*People v. Jennings* (2010) 50 Cal.4th 616, 652 [Confrontation clause error subject to harmless error analysis].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


RAMIREZ
P. J.


RICHLI
J.

8